# CHARLESTON

## STATE V. WETZEL.

Submitted September 2, 1914.    Decided September 29, 1914.

1.  GRAND JURY—*Legal Status—Issuance of Venire.*

    So much of Sec. 3, Ch. 157, serial section 5539, Code 1913, as relates to the issuance of a venire facies for grand jurors is directory, and the failure to issue such writ will not vitiate an indictment found by a grand jury selected and drawn in the manner provided by the statute, who actually attended and are empaneled and sworn according to law. Such a grand jury is lawfully constituted.    (p. 8).

2.  SAME—*Legal Status—Summons to Clerk of County Court—Failure to Issue.*

    Likewise, the failure of the clerk of the circuit court to issue a summons requiring the clerk of the county court to attend the drawing of grand jurors, does not affect the legal status of a grand jury; provided the clerk of the county court does actually attend and assist in the drawing of such grand jurors.    (p. 10).

3.  SAME—*Requisites to Validity.*

    The presence of the clerk of the county court at the drawing of grand jurors, and the list of names of persons selected by the county court to serve as such, as well as its delivery to and preservation by the clerk of the circuit court, are all indispensable requirements, and a failure to comply with all, or any one, of them renders the grand jury illegal and their indictments void, because not selected in the manner provided by law. Respecting these matters the statute is mandatory.    (p. 10).

4.  SAME—*Secrecy of Grand Jury Proceedings—Discussion of Evidence by Persons Not Sworn.*

    It is the policy of the law to preserve inviolate the secrecy of proceedings before the grand jury, and the discussion of evidence before them, relating to an alleged crime which they are then considering, by persons not sworn to testify as witnesses, will vitiate an indictment returned by them whether they were actually influenced by such discussion or not. The law seeks to guard against even the possibility of such influence.    (p. 13).

5.  INDICTMENT AND INFORMATION—*Duplicity—Embezzlement.*

    An indictment charging defendant, the cashier of a bank, with embezzling money belonging to the bank, at divers times, "beginning with the said 27th April, 1906, and ending with the said —— day of July, 1909," stating the aggregate amount of such various

sums, charges but a single act of embezzlement, and does not contravene Sec. 5, Ch. 158, Code 1913.   (p. 16).

6.   EMBEZZLEMENT—*Evidence—Intent.*

In a trial for embezzlement, it is proper to admit evidence tending to prove that defendant, the cashier of a bank, forged certain notes for the purpose of falsifying the bank's accounts. Such evidence is admissible on the question of intent to embezzle.   (p. 20).

7.   CRIMINAL LAW—*Necessity of Exception—Appeal—Plea in Abatement.*

A plea in abatement filed in a case is a part of the record, and it is not necessary to except to the action of the court in sustaining a demurrer thereto in order to claim the benefit of error alleged to have been committed in sustaining the demurrer.   (p. 20).

Error to Circuit Court, Roane County.

O. B. Wetzel was convicted of embezzlement and brings error.

*Reversed and Remanded.*

*Ryan & Boggess, Harper & Baker, G. F. Cunningham, Warren Miller,* and *Hogg & Hogg,* for plaintiff in error.

*A. A. Lilly,* Attorney General, and *John B. Morrison* and *J. E. Brown,* Assistant Attorneys General, for the State.

WILLIAMS, JUDGE:

Defendant was tried and convicted on an indictment for embezzlement and brings error.

Before pleading in bar he filed four several pleas in abatement, three of them challenging the validity of the indictment on the ground that the grand jurors had not been selected in the manner provided by law, and the fourth on the ground that certain persons, not sworn as witnesses, were permitted to appear before them, while they were engaged in their deliberations, and discuss with them, and make suggestions respecting, the evidence on which the indictment was found. Demurrers to all these pleas were sustained, and that ruling is one of the errors assigned.

The first plea avers that no grand jury was lawfully impaneled to serve at the term of the court at which defendant was indicted, because the clerk did not, at least thirty days, or at any other time, before the beginning of the said

term issue a writ of venire facias. It does not aver that the persons appearing and serving as grand jurors were not drawn from the box containing the ballots with the names of those listed by the county court to serve as such in the manner provided by section 2, chapter 157, Code 1913. The plea presents the single question whether, in view of the method now provided by statute for selecting persons to serve as grand jurors, a venire facias is indispensable. At common law such a writ was necessary. It was the sheriff's precept and authority, and without it he could not summon a grand jury, and one summoned without the writ was powerless to act. *Whitehead* v. *Commonwealth*, 19 Grat. 640; *Nicholas* v. *State*, 5 N. J. L. 539; 20 Cyc. 1312. But the statute has provided a different method of selecting both petit and grand jurors, which takes the place of the common law method. The sheriff has no longer the right to select; he can only summon those whose names have been drawn from the box, except when some of them have failed to appear and he has been directed by the court to summon others in their places. Hence the only purpose of a venire facias now is to authorize the summoning of the sixteen men who have been drawn to serve as grand jurors. Suppose they are notified that they have been drawn and they do appear at court and are impaneled and sworn and actually serve as grand jurors, must their proceedings be held void for want of a writ commanding the sheriff to summon them? To so hold would certainly be very unreasonable and hypertechnical. The statute in this particular is directory merely, and a venire facias is no longer essential to the constitution of a legal grand jury. 20 Cyc. 1307. Apropos to this question see *State* v. *Medley*, 66 W. Va. 216 and *State* v. *Taylor*, 57 W. Va. 228. The supreme court of Pennsylvania, in *Commonwealth* v. *Slater*, 2 Pearson 461, held that if a grand juror, selected in the manner provided, attended court, it made no difference how he was summoned. A similar holding by the supreme court of Kentucky is found in *Commonwealth* v. *Graddy*, 4 Metc. 223. A venire facias can have no possible effect upon the selection of persons to serve as grand jurors, and a grand jury which has been selected in the manner provided by the

statute is not rendered illegal by the failure of the clerk to issue a writ of venire facias. The demurrer to this plea was properly sustained.

The other pleas present more serious questions. Plea No. 2 avers that the clerk of the circuit court did not issue a summons for the clerk of the county court to appear at the office of the former, before the term of court at which the indictment was found, to assist in drawing from the box the names of persons to serve as grand jurors, pursuant to Sec. 3 of Ch. 157, Code 1913; and that the clerk of the county court did not attend such drawing. Sec. 2 of Ch. 157 provides for making up the list of persons to serve as grand jurors for the year, in the following manner, viz.: The county court at its levy term, and at any other time when required by an order of the circuit court, shall prepare a list of not less than one hundred nor more than one hundred and fifty names of freeholders of the county, to be selected from the various magisterial districts, as near as may be in proportion to their respective populations, who shall be qualified jurors. The list so made out is then to be delivered to the clerk of the circuit court whose duty it is to safely keep the same. At the time of making out the list the county court is required to have the name of each person appearing on the list clearly written, each on a like separate paper or ballot. The ballots are then to be folded or rolled up so as to resemble each other as near as may be, and the names from each magisterial district are to be enclosed in a separate envelope, indorsed with the name of the district and the number of ballots enclosed, and the envelopes placed in a secure box which shall be delivered to, and safely kept by, the clerk of the circuit court. Continuing, the statute says the box "shall be opened only on the order of the court, or by the clerk of the county court, or a justice as hereinafter described." By Sec. 3 of the same chapter it is provided that all grand jurors shall be selected by drawing ballots from said box, and the persons whose names are drawn shall be returned to serve as grand jurors. The statute directs the clerk of every circuit court to issue a venire facias for sixteen grand jurors at least thirty days before any term of the court at which

a grand jury may be wanted, section 1 of the chapter providing that a grand jury shall be drawn for every term unless the court, or the judge in vacation, by . order addressed to the clerk twenty days before the term, dispenses with a grand jury at that term. Quoting the statute in relation to the provision which the plea alleges has been violated, "At the time of issuing such venire the clerk shall issue a summons in the name of the State, requiring the clerk of the county court of such county, on a day named in such summons, which shall not be less than twenty days before such term, for the purpose of drawing the ballots for the number of grand jurors mentioned in said writ. If the clerk of the circuit court be also clerk of the county court, the summons shall require a justice to attend for such purpose. The writ of venire facias and summons shall be served as provided in section nine of chapter one hundred and sixteen of this Code, and the said officer shall attend and cause the proper number of grand jurors to be drawn from the box, and a list thereof to be delivered as provided in said section. The drawing and summoning of grand jurors shall be according to sections nine, ten, eleven, twelve and thirteen of said chapter one hundred and sixteen, so far as they are applicable, except that the ballots shall be drawn from the several envelopes in proportion as near as may be to the numbers endorsed thereon, but so that at least one ballot shall be drawn from each envelope." The sections of chapter 116, to which reference is made, relate to the drawing of petit jurors, and described with great particularity the manner in which it shall be done by the two jury commissioners. The two clerks must comply with those sections of the statute in the drawing of grand jurors. It is only necessary to read those sections to be convinced that the presence of both jury commissioners at the drawing is imperative; and the presence of both clerks is just as indispensable in the drawing of grand jurors. A summons to the clerk of the county court is provided for only to insure his attendance at the drawing of the grand jury, and his attendance at the proper time and place, without such summons, is a sufficient compliance with the statute. That provision of the statute is directory merely.

But that his presence is indispensable is clearly shown by
the general plan and purpose of the statute which is to take
from the sheriff the discretion which he had at the common
law, by virtue of venire facias, to select the grand jurors,
and make their selection depend upon chance as largely as
possible; and in order to insure a rigid compliance with the
statute, the drawing was intrusted not to one person but to
two. The wisdom of the statute is clearly discernible; it
avoids the possibility of favoritism which formerly was too
frequently shown in the selection of juries when the selection
was left to the discretion of a single officer, and tends to se-
cure impartial men. So· careful was the legislature in guard-
ing against any possible ·fraud that might be committed, if
the drawing was left to one person only, that it provided that,
in the event that the circuit clerk and county clerk both hap-
pened to be the same person, a justice of the peace should be
summoned to attend and assist in the drawing. A similar
question to this arose in Maryland, under a statute of that
state which authorized four judges, any two of them forming
a quorum, to meet at such place in Baltimore city and on
some day in the month of March of each year, as they should
agree upon, and make up a list of names of seven hundred
and fifty persons to serve as grand and petit jurors in said
city. The tax collector was required to furnish them a list
of all taxable male inhabitants of the city, in order to assist
them in making out the list. It was then the duty of the
sheriff, before each term of the criminal court, to summons
twenty-three persons from the list so prepared to serve as
grand jurors for the ensuing term of the court. Without a
meeting of the judges, or any two of them, in March 1866,
or at any time afterwards for the purpose of making up the
list, one of the deputy clerks of the superior court prepared
a list from persons on the list of former years who had not
served as jurors, supplying the requisite number from the
list of taxable inhabitants furnished by the city collector. The
list thus made up was presented to the judges, not collectively
or to any two of them at once, but separately in their respect-
ive courtrooms, and, without any particular examination,
was approved and adopted by them individually and with-

out consultation with each other. The supreme court of that state held that grand jurors, summoned from the list so made up, was not a lawful grand jury, and that an indictment found by them was null and void. *Clare* v. *The State,* 30 Md. 163. Many of the states have statutes similar to our own, and in every case, so far as we have been able to find, where the statute designates more than one person to attend the drawing of the grand jury, all of them, or a constituted quorum, must be present, and a drawing by one person renders the grand jury illegal and their proceedings void. *Cross* v. *The State,* 63 Ala. 40; *Boulo* v. *The State,* 51 Ala. 18; *State* v. *Brooks,* 9 Ala. 9; *State* v. *Beckley,* 79 Iowa 368; *Jones* v. *State,* 18 Neb. 401.

Plea No. 3 avers that the county court of Roane county, after having made up the list of persons to serve on the grand jury for the year in which the term of court was held, at which the indictment was found, did not then, or at any time thereafter, cause the same to be delivered to the clerk of the circuit court of said county, but that it was destroyed and was at no time delivered to, or received by, the clerk of the circuit court. The statute, Sec. 2, Ch. 157, says, that the list so prepared by the county court shall be delivered to the clerk of the circuit court, "to be by him safely kept subject only to inspection of the court or the clerk of the county court, as hereinafter prescribed." This important provision of the statute can not be disregarded. Without such list it can not be known that the grand jurors drawn were those selected by the county court. We do not intimate that there was any intentional wrong done in this case, but it is made possible, if the list is not preserved, for some designing person to extract the ballots from the box and substitute others instead, without detection. The preservation of the list would prevent the possibility of such a fraud.

Plea No. 4 avers that the sixteen persons, naming them, who had been impaneled to serve as grand jurors, after having been sworn and charged as required by law, were sent to their room in the courthouse for the purpose of inquiring of, and presenting, all violations of the penal laws of the state; that after having assembled in their room they adjourned

to a room in another building, to-wit, the building of the Bank of Spencer, and, while in said room, resumed their work of inquiring of and presenting all felonies and misdemeanors; that while there they freely discussed the evidence relating to defendant's case with certain persons, whose names are set out in the plea, and without such persons having been previously sworn; that they received suggestions from and exchanged opinions with said four persons respecting the evidence upon which the indictment was subsequently found; that after discussing the evidence and exchanging opinions with the persons named, they returned to their room in the courthouse and returned the indictment on which defendant was tried. The plea further alleges, on information and belief, that the discussions of the evidence with the persons unsworn induced the grand jury to find the indictment. This plea is good; the averments, if proven, will vitiate the indictment. The law holds inviolate the secrecy of proceedings before the grand jury. No one is permitted to be present, when they are voting on an indictment, not even the prosecuting attorney, or the judge of the court, and no person, not a witness sworn and sent before them to give evidence, or the prosecuting attorney for the purpose of advising them upon questions of law only, is permitted to be present at any time while they are considering evidence. Quoting from the opinion of Judge Bynum, in *Lewis* v. *Board of Commissioners,* 74 N. C. 199: "None but witnesses have any business before them (the grand jury). No one can counsel them but the court. They do not communicate with the solicitor, but with the court, either directly or through an officer sworn for that purpose. They act upon their own knowledge or observation, in making presentments. They act upon bills sent from the court, with the witnesses. The examination of witnesses is conducted by them, without the advice or interference of others. Their findings must be their own, uninfluenced by the promptings or suggestions of others, *or the opportunity thereof.*" It was also decided by the court of that state, in *State* v. *Branch,* 68 N. C. 186, that a judge of the court has no right to require a grand jury to have the witnesses on the part of the state examined in his presence. The

supreme court of Mississippi, in *Wilson* v. *State,* 70 Miss. 595, held an indictment invalid, because an attorney, who was not employed to prosecute, had gone before the grand jury, not as a witness, and advised the bringing of the indictment. The court in its opinion says that the candid statement by the attorney, that he went before the grand jury because he thought the defendant was a scoundrel and therefore desired the indictment, presented the very reason why he should not have gone before the jury, for, says the court, "it is just such influences the law forbids. He was not a witness before that body, and was not an officer having any duty to perform touching the matter under examination. His purpose must have been to advance in some way the prosecution; and this is precisely what the law forbids to be done." See also *Welch* v. *State,* 68 Miss. 341. Says the supreme court of Connecticut, in *State* v. *Fasset,* 16 Conn. 457: "It is the policy of the law, in the furtherance of justice, that the preliminary inquiry before a grand jury should be conducted in secret." The Oklahoma criminal court of appeals, in *Hartgraves* v. *State,* 5 Okla. Crim. Rep. 266, 114 Pac. 343, under a statute of that state permitting the grand jury to invite the district attorney, and permitting him to appear, before them for the purpose of giving information or advice relative to any matter cognizable by them, and to interrogate witnesses, whenever in his opinion it is necessary, but forbidding the appearances of any other person before them, excepting their own members and witnesses actually under examination,— a statute we take to be but declaratory of the common low,—an attorney, not the prosecutor, who was privately employed to prosecute, appeared before the grand jury and assumed to represent the state at the request of the county attorney who was disqualified from prosecuting the defendant, and this was held to be ground for setting aside the indictment.

Bellinger, district judge, in *U. S.* v. *Edgerton,* 80 Fed., at page 375, says: "It is beyond question that no person, other than a witness undergoing examination, and the attorney for the government, can be present during the session of the grand jury. The rule is inherent in the grand jury system with all the force of a statutory enactment. The cases where

bailiffs and stenographers have on occasions been temporarily present in the grand jury room are only apparent exceptions. The rule, in its spirit and purpose, admits no exceptions.'' The following cases are also in point and the decisions are to the same effect: *Lawrence* v. *Commonwealth,* 86 Va. 573; *U. S.* v. *Rosenthal,* 121 Fed. 862; *U. S.* v. *Virginia-Carolina Chemical Co.,* 163 Fed. 66; *U. S.* v. *Heinze,* 177 Fed. 770. The second point of the syllabus in the last case cited reads as follows: ''The presence in a grand jury room, during an investigation of a case which results in an indictment, of a person not authorized by law to be there is ground for quashing the indictment.'' See also the opinion of Judge DENT in *Eastham* v. *Holt,* 43 W. Va., beginning at page 623. The court was equally divided in that case and the question was not decided, but was ably discussed, pro and con, by Judges BRANNON and DENT. We would not be understood to intimate in this opinion that the persons named in the plea, as appearing before the grand jury unsworn, nor that the grand jurors themselves, were guilty of any intentional misconduct. But, to quote the language of the court in *U. S.* v. *Edgerton,* 80 Fed. 374: ''If the presence of an unauthorized person in the grand jury room may be excused, who will set bounds to the abuse to follow such a breach of the safeguards which surround the grand jury.'' Defendant's pleas numbered 2, 3, and 4 were good and the demurrers thereto should have been overruled, and the State required to reply thereto. If, upon a trial of the issues to be joined on those pleas, the jury should find in favor of the defendant, it will vitiate the indictment. And, as the result of those issues cannot be foreknown, it is necessary to settle the principles arising out of the main issue.

Defendant's demurerr to the indictment and also his motion for a more certain bill of particulars were overruled, and these rulings were separately assigned as error. They present a single question and can be disposed of under one head. The question is, does a series of peculations by the cashier of a bank, extending over a period of three years, constitute one, or many distinct embezzlements? Defendant was indicted for embezzling funds belonging to the Bank of

Spencer of which he was cashier. During the time he was such officer, beginning with the month of April, 1906, and extending up to July 10, 1909, the bill of particulars sets out with minuteness the dates and amounts of money appropriated by him at various times. A bill of particulars could not have been framed to give defendant more certain and definite information of the crime with which he was charged. But it is contended that each separate item on the bill of particulars constitutes a distinct embezzlement, and that they cover a greater period of time than is allowed by statute. Sec. 5, Ch. 158, serial section 5554, Code 1913, provides that, in a prosecution for embezzlement, "it shall be lawful, in the same indictment, to charge, and thereon to proceed against the accused, for any number of distinct acts of such embezzlements or fraudulent conversions which may have been committed by him within six months from the first to the last of such acts." The bill of particulars covers a period of three years, and defendant insists that the state was bound to elect to prosecute him for the various acts of embezzlement committed within some period of six months from the first to the last of such acts. The same question is presented by the demurrer to the indictment which is in three counts, the last one charging defendant with having embezzled and converted to his own use, "in divers and different quantities, sums, and amounts, at divers and different dates beginning with the said 27th day of April, 1906, and ending with the —— day of July, 1909, and the divers different sums of money and currency of the United States of America amounting in the aggregate to the sum of two thousand seven hundred and twenty-three and 71/100 dollars." If each separate sum of money shown by the bill of particulars to have been taken and converted to his own use by the defendant constitutes a separate and distinct offense the demurrer should have been sustained, otherwise it was proper to overrule it. A determination of this point depends upon the proper construction of the words of the statute "distinct acts of such embezzlement." The number of items in the bill of particulars runs up into the hundreds, but by far the greatest number of them are less in amount than ten dollars, many ap-

pearing in each month. Defendant, by virtue of his office, had charge of the bank's funds for the whole period of time covered by the indictment. He occupied a position of trust, and the jury could well infer that the many small sums of money, taken at various and sundry times, were taken in furtherance of, and pursuant to, a preconceived and continuing design to appropriate it to his own use. In 7 Enc. Pl. & Pr. 447, the law is thus stated: "Where the accused has been guilty of a series of peculations, an indictment charging the embezzlement of the entire amount, and setting out with minute particularity the circumstances attending the transaction from its commencement to its consummation, is not open to the objection that it charges more than one offense." In a case very similar to the one under review, where the defendant, president of a corporation and custodian of its funds, was indicted for embezzling a large sum of money, and it appeared from checks exhibited with, and referred to in, the indictment, that they numbered over three hundred and extended over a period of more than three years, the supreme court of Georgia held that the indictment charged but a single offense. *Jackson* v. *The State,* 76 Ga. 551. In *State* v. *Broughton,* 71 Miss. 90, the defendant was charged with embezzling money collected by him as agent for the Standard Oil Company. The indictment alleged that he had collected money, as agent of said corporation, from different ones of its customers and at different times, and had failed to enter credits therefor on their respective accounts, and that his intent was to defraud them as well as the corporation. A demurrer was interposed on the ground, among others, that the indictment charged two or more distinct offenses. The allegation that defendant had failed to give proper credit on the several accounts of his employer's customers, was held to be surplusage, and the indictment was treated as having charged but a single offense. The same holding was made by the supreme court of Ohio in *Gravatt* v. *The State,* 25 Ohio 162, the second point of the syllabus of which is as follows: "On a charge of embezzlement, the fact that the money alleged to have been embezzled by the accused was received in several sums, at different times, and from different persons,

affords no ground for requiring the prosecutor to elect on which sum he will rely for conviction." See also *Brown* v. *State,* 18 Ohio St. 496. In our own case of *State* v. *Moyer,* 58 W. Va. 147, it was held, point twelve of the syllabus, that where it appeared that an agent had received money from different persons at different times for his principal, in the continuous course of dealings between him and his principal, the jury could find the aggregate sum to be a single embezzlement. The statute does not define what shall constitute "distinct acts of embezzlement," and what are such must depend upon general principles of law; and, in view of the authorities which we have cited, which we think propound the correct rule of law, we hold that the indictment charged but a single act of embezzlement, and that the bill of particulars was sufficient.

Having already determined upon a reversal of the judgment, we deem it unnecessary to pass upon the assignment relating to the court's refusal to grant defendant a continuance on account of an absent witness.

The giving of certain instructions for the state, and the refusal to give certain others asked for by defendant, are assigned as error. The giving of Nos. 3, 4, and 5 for the state is complained of. Instructions 3 and 4 harmonize with the principles already decided, and were properly given. There was evidence tending to prove that defendant had furnished the commissioner of banking of West Virginia with a statement of the condition of the bank, and also the books and papers belonging to the bank; that among the papers so furnished there were two notes for $1,500 each, one purporting to have been made by P. A. Tallman, the other by M. D. Chewning which were invalid notes. Instruction No. 5 told the jury that, if they believed these notes were invalid and were so furnished by defendant to the commissioner of banking, they might take this fact into consideration upon the question of the intent of the defendant in fraudulently appropriating the funds of the bank to his own use, if they further believe that he did so fraudulently appropriate the funds. This instruction was properly given. The conduct of defendant, in that particular, was a circumstance from which

the jury could infer fraudulent intent. *Jackson* v. *The State,* 76 Ga. 551; 16 Cyc. 530.

It was not error to refuse defendant's instruction No. 4.

It is asigned as error that the court improperly admitted the testimony of S. P. Smith, P. A. Tallman and M. D. Chewning respecting the Tallman and Chewning notes. It is claimed that this was an attempt to prove defendant guilty of the distinct crime of forgery. That, however, was only incidental to the proving of a falsification of the accounts of the bank, which was admissible as bearing on the question of intent. The court limited the effect to be given by the jury to that evidence in one of the state's instructions, admitting it only on the question of intent.

The attorneys for the State make the point in their brief that the failure of defendant to except to the action of the court in overruling the demurrers to the several pleas in abatement, was a waiver of the error. We do not think so. Such an exception was not necessary. The order of the court shows that the pleas were filed and that the court considered them and sustained the demurrers thereto. The pleas therefore became as much parts of the record as the indictment, or as an order of the court, and no exception to the court's ruling was necessary. The cases cited and relied on by counsel in support of their proposition are all cases in which pleas were tendered, but not filed, and rejected. In such case it seems that an order of the court is necessary to make the rejected plea a part of the record, but not so where the plea is filed and held bad on demurrer. The matters complained of were properly called to the attention of the court by pleas in abatement.

The judgment is reversed and the verdict of the jury set aside, and an order will be entered here sustaining the demurrer to plea in abatement No. 1, and overruling the demurrers to pleas Nos. 2, 3, and 4, and the case will be remanded for a new trial, with leave to the State to reply to pleas in abatement Nos. 2, 3, and 4.

*Reversed and Remanded.*