# CHARLESTON

STATE v. HOKE et al.

Submitted March 9, 1915. Decided March 23, 1915.

1. CRIMINAL LAW—*Harmless Error—Ruling on Demurrer.*
   If the count in an indictment on which a conviction is had, is good, it is immaterial whether a demurrer to other counts should have been sustained. If error is committed in overruling the demurrer, it is clearly not prejudicial to the accused. (p. 39).

2. COURTS—*Order Calling Special Term—Statement of Necessity— Sufficiency.*
   A vacation order of the circuit judge, calling a special term of court and requiring a grand jury to be summoned, which recites that a necessity therefor exists, sufficiently shows that the term was properly called. (p. 39).

3. GRAND JURY—*Failure to Issue Venire Facias—Effect on Indictment.*
   The provisions of Sec. 3, Ch. 157, Code 1913, respecting the time for issuing a venire for the grand jury, and summoning the clerk of the county court to assist in the drawing thereof, are merely directory. If the jurors are drawn, in the manner provided, from the list furnished by the county court, and actually attend at court and are duly sworn and serve as such, it matters not that they were not actually summoned. (p. 39).

4. CRIMINAL LAW—*Presumption as to Grand Jury.*
   If it appears from the record that some of the grand jurors were not those who were regularly drawn, it will be presumed, in the absence of a contrary showing, that they were legally summoned to take the place of the drawn jurors who failed to appear. (p. 39).

5. SAME—*Trial—Presence of Witness.*
   It is within the judicial discretion of the trial court to permit a witness for the state, who is familiar with the facts on which the prosecuting attorney relies to establish the guilt of the accused, to be present in court during the trial to aid him in conducting the examination of other witnesses. (p. 39).

6.  SAME—*Jury—Administration of Oath—Presumption.*

    If the record recites that the jury ''were elected and sworn according to law,'' it will be presumed that the proper oath was duly administered.   (p. 41).

7.  SAME—*Custody of Jury—Sheriff—Administration of Oath.*

    It is not necessary that the sheriff be sworn to keep the jury together during the trial.  He is a sworn officer of court and the law imposes that duty upon him, and the oath could impose no additional duty or responsibility.  Instructions to him by the court, concerning his duty, are sufficient.   (p. 41).

8.  SAME—*Presence of Accused—Necessity—Proceeding After Conviction.*

    It is not necessary, after conviction and final judgment, that the accused should be present in court when an order is made permitting the withdrawal of certain original papers used as evidence on the trial, and directing the filing of certified copies thereof with the clerk.   (p. 41).

9.  SAME—*Harmless Error—Admission of Evidence.*

    Copies of invoices of the goods alleged to be stolen, offered in evidence to identify the property and verified by affidavits thereto attached, furnishes no ground for reversal of a judgment of conviction, when it appears that such invoices were proven to be true copies of the originals, by a witness who was present at the trial and testified that he had compared them with the originals and found them to be true copies thereof.   (p. 41).

10.  WITNESSES—*Competency—Insanity—Presumption—Objection.*

    The court must determine the competency of a witness, and a motion to set aside the verdict on the ground that an insane witness was permitted to testify, supported by affidavits tending to show irrational conduct by such witness at times, is properly overruled, when it does not appear that he was ever adjudged a lunatic, and was well known to the accused who made no objection to his testifying when offered as a witness.   (p. 42).

11.  SAME—*Competency—Insanity.*

    To render such witness incompetent, his mental aberration must be sufficient to negative trustworthiness at the time his testimony is given.   (p. 42).

    (LYNCH, JUDGE, absent.)

Error to Circuit Court, Greenbrier County.

Theodore Hoke and another were convicted of grand larceny, and bring error.

*Affirmed.*

*John W. Arbuckle* and *John L. Rowan,* for plaintiffs in error.

*A. A. Lilly,* Attorney General, and *John B. Morrison* and *J. E. Brown,* Assistant Attorneys General, for the State.

WILLIAMS, JUDGE:

Theodore Hoke and his two sons, Jesse and Carl, were jointly indicted and tried in the circuit court of Greenbrier county for grand larceny. Carl Hoke was acquitted. Theodore and Jesse Hoke were convicted and sentenced to serve terms in the penitentiary, and they bring error. Numerous assignments are made in the petition for writ of error, but most of them seem to have been abandoned as they are not mentioned in brief of counsel.

The indictment contains two counts, the first charging defendants with stealing, taking and carrying away twenty-five pairs of men's shoes of the value of $65.55, sixty-nine pairs of ladies' shoes of the value of $166.80, and thirty-six pairs of children's shoes of the value of $48.60, property of the Hamilton-Brown Shoe Company; and the second count charging them with having bought the same goods from another person, whose name is unknown, knowing them to have been stolen. It is proven that the shoes were stolen from a box car of the Chesapeake & Ohio Railway Company while they were in transit from St. Louis to Boston. The shoes were in boxes, and the State's theory is that the car was entered, either at Hart's Run, a way station in Greenbrier county, or at some other station west of that point where the train had stopped temporarily, by the defendants, or some one or more of them, and the boxes dumped off at Hart's Run, on the night of the 8th, or early morning of the 9th, of September, 1912, and carried to a lumber camp a mile or two from the railroad. Some of the shoes were found in the possession of Theodore Hoke and Jesse Hoke and identified as the property of the Hamilton-Brown Shoe Company, which were contained in the boxes lost from the carload lot of shoes shipped over the Chesapeake & Ohio railway. None of the defendants testified, and there is ample evidence in the record to support the verdict.

It is urged that the demurrer to the second count of the indictment should have been sustained. This point is rendered immaterial by the fact that defendants were convicted on the first count only. They were clearly not prejudiced by the bad count, if such it was, a question we do not decide. *Early* v. *Commonwealth*, 86 Va. 921, and *Johnson* v. *Commonwealth*, 102 Va. 927.

The indictment was found at a special grand jury term, called by the judge for the 11th of March, 1913. It is insisted that, because the order entered calling the special term does not state that "the public interest required it," lack of jurisdiction is shown, and the proceedings had at such term are void. This point is clearly without merit. *State* v. *Shanley*, 38 W. Va. 516. The order does recite, "a necessity existing therefore, it is ordered", etc. That shows compliance with the statute, even if it be necessary that the order should state the reason for calling the special term, a question we do not decide.

The fact that the clerk did not issue a venire facias for the grand jurors, at least thirty days before the term, does not affect the indictment. That provision of Sec. 3, Ch. 157, Code 1913, is merely directory. *State* v. *Wetzel*, 75 W. Va. 7, 83 S. E. 68. It is urged as error that the grand jurors drawn to serve at the special term did not constitute the jury that found the indictment, and that there is no order showing that some of the drawn jurors had failed to appear and others were substituted, pursuant to Sec. 4, Ch. 157, Code 1913. It appears that two or three persons who served as jurors were not among the list that was drawn. But no objection was made in the lower court to the constitution of the grand jury, and it does not appear that any of the persons serving as such were not legally qualified. Hence, it must be presumed that the jury was legally constituted. *State* v. *Tucker*, 52 W. Va. 420. It will not be presumed that the circuit court failed to perform its duty in the matter of making up the grand jury. Error must appear.

It is assigned as error that the court permitted C. D. Duke, special agent for the railroad company and a witness for the State, to remain at the bar of the court during the progress of the trial, over the objection of defendants, after they had

moved to have all the witnesses excluded from the courtroom until they should be called to testify. It is the general practice to grant such request when made by either party to a cause, and it is done in the interest of justice, for the purpose of eliciting from each particular witness the truth as to the facts about which he is to testify. But it is held by many authorities, perhaps by the weight of them, that the granting of such request rests in the sound discretion of the trial court, that it is a privilege usually accorded by the court but can not be demanded as matter of right. But whatever is the rule, no authorities are cited by counsel, and we find none, supporting the proposition, that it is error to permit the prosecuting witness, or some witness who is familiar with the facts on which the state expects to rely to establish the guilt of the prisoner, to remain at the bar of the court for the purpose of prompting the attorney for the state regarding facts which he knows are within the knowledge of certain witnesses to be examined. Witness Duke was the detective for the railroad company that ferreted out the crime, and traced it, as he supposed, to the door of defendants. Consequently he possessed information that enabled him to render valuable aid to the prosecuting attorney. It was certainly no abuse of judicial discretion to permit him to remain at the bar during the examination of other witnesses. Says Thompson on Trials, Vol. 1, (2nd ed.), Sec. 276, the rule of separating the witnesses "is a matter of sound judicial discretion, which discretion will not be revised on error or appeal in the absence of the appearance of abuse." Numerous decisions are cited to support the text. See also, *Hey* v. *Commonwealth*, 32 Grat. 946. The rule we think is correctly stated in a point of the syllabus in *Ryan* v. *Couch*, 66 Ala. 244, which we here quote: "In excluding witnesses from the courtroom during the examination of others, whether on request, or *ex mero motu*, the court exercises a sound judicial discretion, which is not revisable on error or appeal; but the rule should never be applied to the exclusion of a party to the suit, who has a constitutional right to be present during the trial; nor should it be applied to the exclusion of an agent, when it is made to appear to the satisfaction of the court, by the statement of counsel in open court, or otherwise, that, on account of his

intimate knowledge of the facts, his services are required by counsel in the management of the trial, especially in the necessary absence of his principal.''

It is also assigned as error that the record does not show that the jury were properly sworn to try the issue, or that the sheriff was legally sworn to keep the jury together. True it does not set out the oath administered to the jury, but it does recite that they ''were elected and sworn according to law.'' We must, therefore, presume the oath, in proper form, was administered to them. *State* v. *Ice*, 34 W. Va. 244; *Wells* v. *Smith*, 49 W. Va. 78; and *State* v. *Kellison*, 56 W. Va. 690.

The sheriff is a sworn public officer whose duty it is to wait upon the court, and have charge and custody of the jury during the trial. He is required to keep them together and prevent communication between them and others, or among themselves concerning the case, during the trial. While it is the custom of trial courts to swear the sheriff, or his deputy having charge of the jury in felony trials, to faithfully observe his duty in that respect, this court has held it was not necessary to do so, and that such oath imposes no additional duty or responsibility upon the officer. *State* v. *Poindexter*, 23 W. Va. 805; *State* v. *Shores*, 31 W. Va. 491; and *State* v. *Ice*, 34 W. Va. 244. However, the order of the court entered on the 25th of June, 1913, the first day of the trial, shows that such oath was in fact administered to the sheriff. And, even if the law required such oath to be administered, swearing him at the beginning of the trial was sufficient, it would not be necessary to repeat the oath at every recess and daily adjournment of the court, throughout the trial.

Objection is made to the order of July 2, 1913, because it fails to show that the prisoners were in court when it was made. That order was made several days after defendants were convicted, and after final judgment was pronounced. It was simply an order permitting the withdrawal of certain books of original entry, which had been used in evidence during the trial, copies of entries therein having been made and filed with the clerk by order of court. It had no bearing upon the trial which was then ended. None of defendants' rights were thereby violated.

Complaint is made of certain affidavits that appear in the

record. They were appended to certain invoices of the shoes shipped from St. Louis to Boston, among which were the stolen boxes, verifying the invoices. But the correctness of the invoices were proven by witness C. P. Luckett, who was present at the trial and testified concerning them. He swore he compared the certified copies with the originals sent by the Hamilton-Brown Shoe Company of St. Louis, to the Hamilton-Brown Shoe Company of Boston, and that they were true copies of the originals. Defendants were, therefore, not prejudiced by the introduction of the exhibits. Moreover, it does not appear that the affidavits appended to the exhibits were read to the jury, although they are in the record. Ownership of the stolen goods was fully proven. There is no conflict in the evidence on that fact.

It is urged as error that Ira Fury, an alleged lunatic, was permitted to testify for the State. His testimony is important. He swore he was present at the lumber camp when the shoes were brought there by Theodore Hoke and Jesse Hoke; that they came to camp with them in boxes, just before day on the morning of September 9th; that they opened the boxes and transferred the shoes into bags, and used the broken boxes for fuel to cook breakfast with. Although there is other evidence on which the jury might have found defendants guilty, still we can not say they would have done so, in the absence of Fury's testimony. Hence, his testimony is necessarily prejudicial, if he was not competent. The defense is, that defendants bought the shoes from an unknown negro who had them in bags; and Fury had been examined as a witness in the preliminary hearing before the justice, and also before the grand jury, and on those occasions he swore Theodore and Jesse Hoke had brought the shoes to the camp in bags, and on the trial in court he admitted that his previous statements as to that fact were false, and swore the shoes were brought to the camp in boxes. His contradictions affected his credibility which was purely a jury question, but his competency had to be determined by the court. His testimony appears to be that of a rational man, until he is cross-examined respecting his contradictions and then makes some statements tending to reveal a mind unbalanced on the subject of religion and moral obligations. He admitted that

his mind was not right at times, but there is no evidence that
he was ever arrested for lunacy or adjudged a lunatic. When
the shoes were brought to the lumber camp he was there in the
capacity of workhand. No objection was made to his
competency at the trial, and no request that his sanity be then
inquired into. But his sanity was called in question by
affidavits afterwards taken and presented to the court in sup-
port of a motion to set aside the verdict. Some of the affiants
state that, judging from Fury's conduct on the 25th and
26th of June, when defendants were being tried, and on the
following day, they did not believe him sane. One says he
was "flighty in mind"; another that he was "non compos
mentis"; and another that "he verily believes from con-
versations had with the said Ira Fury, and his actions and
conduct during the present term    *    *    *    that the said Ira
Fury is a lunatic and incompetent to give testimony in any
case." This affiant also narrates certain things done and said
by the witness on the night of the day he testified in the trial,
while on his way home from the courthouse, which would
seem to indicate that he was not then in his right mind. But
we can not say the court erred in not setting aside the verdict
on these affidavits. No objection was made to the competency
of the witness, and if there had been the court would, no
doubt, have inquired into his sanity. Defendants may have
thought it would be beneficial to their case to let his evidence
go to the jury, that his admission of previous false swearing
would weaken his testimony and cause the jury to disregard
the whole of it. We do not know they did not do so, because
there is other evidence upon which they could have convicted
defendants. Having never been adjudged a lunatic, there
was a presumption in favor of the witness' competency, which
cast upon defendants the burden of proving that he was in-
competent, if such was the fact. It is not every degree of
insanity or mental aberration that will disqualify a witness.
It has to be sufficient to negative trustworthiness. 1 Wigmore
on Evidence, Sec. 492. Lunatics sometimes have lucid inter-
vals and, during such intervals, they are competent witnesses.
If they have sufficient understanding to retain in memory the
events concerning which they testify, they are competent.
The foolish things, said and done by Fury on his way home

after the trial was over, and shown by the affidavits of A. L. Spence and others, do not prove that he was not sane at the time he testified. The trial judge heard his testimony and observed his demeanor on the witness stand, and was, therefore, in much better position to judge of his competency than we are from merely reading his testimony from the record. It does not appear that the court erred in permitting him to testify, or in refusing to set aside the verdict upon affidavits relating to his mental condition procured after the trial was over. *Coleman* v. *Commonwealth,* 25 Grat. 865, and *State* v. *Michael,* 37 W. Va. 565.

We have carefully considered both the instructions given on behalf of the State, and those requested to be given by defendant and refused by the court, and we find no error in relation thereto. Instruction No. 3, given by the court in lieu of defendants' No. 1 which was refused, correctly states the law, and there was no error in substituting it for their No. 1.

Counsel for defendants claim that it was physically impossible for them to have broken and entered the car, while the train was moving, and stolen therefrom the three boxes of shoes. In reply to this argument, we say it does not appear when the car was entered. The seal on the car door was intact when the train left Hinton, and was discovered to be broken and the boxes missing from the car, when the train arrived at Clifton Forge. It had evidently been entered somewhere along the line of railroad between those places. Hart's Run is an intermediate point between them. Some one of the defendants may have entered the car at some station where the train stopped, west of Hart's run, and when it arrived there, have tossed the boxes off, and have remained in the car until it arrived at some stopping place east of Hart's Run and then alighted from the train and returned to that point. It was, therefore, not necessary that they should have boarded a moving train in order to effect an entrance to the car. But it does not appear that the train did not stop at Hart's Run, and it may have done so. That the shoes were shipped in a car that was hauled past Hart's Run, on the night of the 8th of September, 1912, and were stolen therefrom, and some of the found thereafter in the possession of defendants, are facts fully established, and were sufficient to make a prima

facie case against defendants, casting upon them the burden
of explaining, in a way satisfactory to the jury, how they
came to have the shoes in their possession, and that they
evidently failed to do.

We find no error, and, therefore, affirm the judgment.

*Affirmed.*