STATE OF WEST VIRGINIA

*v.*

MITCHELL JUDD GORY

(No. 10764)

Submitted April 24, 1956.          Decided June 26, 1956.

6

*Clifford, Jones & White,* for plaintiff in error.

*John G. Fox,* Attorney General, *Harold A. Bangert, Jr.,* Assistant Attorney General, for defendant in error.

BROWNING, PRESIDENT:

This Court granted a writ of error and supersedeas to a judgment of the Circuit Court of Harrison County of March 9, 1955, which, in effect, affirmed a judgment of the Criminal Court of Harrison County, sentencing defendant, upon a jury verdict of guilty, to one year in jail, and assessing a fine of $500.00.

The first assignment of error is the action of the trial court in sustaining the State's demurrer to the defendant's plea in abatement to the indictment, on the ground that the grand jury, which returned the indictment, was illegal. In support of this contention, the plea sets forth the following facts: Graham I. Lynch and C. Earl Israel were the jury commissioners of the Criminal Court of Harrison County for the year 1952, and up to and including May 31, 1953; the levy term of the County Court for the year 1952 began August 5, 1952, and ended August 19, 1952; the jury commissioners did not, during the levy term of the County Court nor at any time when required by the Criminal Court or the Judge thereof, in vacation, prepare a list of not less than 100, nor more than 200, qualified persons of the county for grand jury service; the jury commissioners did, on November 5, 1952, 78 days after the levy term had ended, without warrant or authority, prepare a list of 219 persons for grand jury service, and delivered such list to the Clerk and placed the names of the persons so listed in the grand jury box; James E. Royal was appointed as jury commissioner to replace C. Earl Israel, whose term expired May 31, 1953; the levy term of the County Court for the year 1953 began on August 4, 1953, and ended on August 18, 1953; the June term of the County Court ended on September 8, 1953; the jury commissioners for the year 1953 did not, at the levy term of the County Court, or, at any other time, prepare any list of not less than 100, nor more

than 200, qualified persons for grand jury service; on October 6, 1953, the jury commissioners met and drew from the grand jury box the names of 16 persons, which had been placed in the box on November 5, 1952, to attend the November, 1953 term of the Criminal Court of Harrison County; and, of these 16, 14 persons, plus 2 others properly selected, composed the grand jury which returned the indictment against this defendant.

The indictment in this case was returned upon the testimony before the grand jury of H. E. Parks of Kingwood, Preston County, West Virginia, and Carl Robert Smithers, who was at the time stationed at Point Pleasant, Mason County, West Virginia, both being members of the Department of Public Safety. It was also upon their testimony before the petit jury that the verdict of guilty was returned. The evidence shows that these two state policemen were summoned to Harrison County by Captain B. A. Bush, commanding officer of Company A, whose headquarters is at Shinnston, Harrison County, West Virginia; that they were furnished with funds for the purpose of making investigations in Clarksburg and surrounding areas of Harrison County with reference to violations of the law relative to illegal sale or possession of liquor and gambling. These officers began their investigation on the evening of October 28, 1953, and the purchase of whiskey, which resulted in the indictment here under consideration, occurred during the early morning of October 31, 1953, at about 12:30 A.M. The officers testified that they ate their dinner at a restaurant in the City of Clarksburg and began their investigation on the evening of October 30 at about 8:30 P.M. The witnesses for the State testified that between that time and 12:30 A.M. the following morning, they purchased and drank approximately nine drinks of liquor each at several places in Harrison County. Parks stated that he has a peculiar ability to regurgitate at will, and that he vomited several times between 8:30 and the time the purchase of two pints of liquor was made at the place where it is alleged that the defendant made the sale. The

defendant and three other witnesses testified for the defense, and none stated that Parks was drunk at the time of the sale, although it was stated that his face was flushed as if he might have been drinking beer or some other intoxicant. These witnesses stated that Smithers was not present when the sale of liquor was made. The four defense witnesses testified that the sale of the two pints of liquor in controversy was made at the establishment known either as "The Cross-roads", according to the State's testimony, or "Rich's Place", according to the defense witnesses. The two officers positively identified the defendant as being the person who sold Parks the two pints of liquor, and both testified that he had some kind of an officer's badge pinned to his belt at the time of the sale. It is in evidence that he was at that time a constable of Elk District, Harrison County, West Virginia.

The defense witnesses stated that Richard Gory, brother of the defendant, sold the whiskey to Parks, although all stated that the defendant was present. He was also present at the establishment a few nights later when it was raided by officers armed with a warrant of search and seizure issued upon the complaint of the witness Parks.

From this brief resume of the testimony, it is obvious that there was sufficient testimony from which the jury could find, beyond all reasonable doubt, that the defendant sold two pints of whiskey to Parks at the time and place alleged. This Court has carefully reviewed all of the twenty-two assignments of error, and does not consider it necessary to discuss any except Nos. 1, 16 and 17, inasmuch as we find the others without merit.

Assignment of error No. 1, as heretofore mentioned, raises a grand jury question, and assignments Nos. 16 and 17 respectively deal with the action of the trial court in refusing a defense motion to strike a portion of the prosecuting attorney's argument, and in sustaining a motion of the prosecution to strike a portion of defense counsel's argument.

10

The statement made by Mr. Ziegler, the Prosecuting Attorney, in his closing argument to the jury, which counsel for the defendant asked the court to instruct the jury to disregard, and which motion was overruled, is as follows: "I submit to you, Gentlemen of the Jury, in closing, that the State Policemen in this case have done their job; I submit to you the grand jury of this county has done its job in returning this indictment; I say to you, Gentlemen of the Jury, that my office, to the best of its limited skill and ability, has done its job; and I say to you, Gentlemen of the Jury, the burden rests on all twelve of you to do your job; and I respectfully ask, as one citizen and taxpayer of this county of twelve others, that you, as twelve God-fearing, law-abiding citizens of Harrison County, do your job and that you return to this Court room with a verdict finding this defendant guilty as charged in the indictment in this case."

Upon motion of counsel for the State, the trial court directed the jury to disregard the following remarks made by Judge Clifford, counsel for the defendant: "And, in closing, I say to you, long live the Constitution of the United States and the Constitution of the State of West Virginia, it is safe in your hands."

This Court is of the opinion that the prosecutor had not gone outside the wide latitude which this Court has said he is entitled to in the statement that he made to the jury, and that the trial court correctly ruled upon that question. *State* v. *Painter,* 135 W. Va. 106, 63 S. E. 2d. 86; *State* v. *Lewis,* 133 W. Va. 584, 57 S. E. 2d. 513. This Court has concluded also that the statement of the defense counsel did not exceed his rights as an officer of the court and counsel for the defendant in making the statement to the jury quoted above, and it was error for the trial judge to instruct the jury to disregard it. However, we find that it was harmless error, and so inconsequential that it could not possibly have prejudiced the defendant, or affected in any way the verdict which was later returned by the jury.

Furthermore, we find that the first ground of the State's demurrer to the defendant's plea in abatement to the indictment, that is, that the jury commissioners prepared a list of 219 persons for grand jury service, whereas the statute provides that a list of not less than 100 nor more than 200 qualified persons of the county shall be placed in a box for grand jury service, was properly sustained, inasmuch as it could not possibly have prejudiced the defendant. We hold that that provision is directory and that there was a substantial compliance with the statute. *State* v. *Medley,* 66 W. Va. 216, 66 S. E. 358, is directly in point upon this question. See also *State* v. *Carduff,* 142 W. Va. 18, 93 S. E. 2d. 502, to which reference has been hereafter made.

The principal assignment of error, and the one upon which the majority of this Court granted this writ, was the action of the trial court in sustaining the State's demurrer to the defendant's plea in abatement to the indictment upon the ground that the list of persons selected for grand jury service in Harrison County, from which the grand jurors were drawn who returned the indictment, was prepared on November 5, 1952, 78 days after the expiration of the levy term of the County Court of Harrison County.

The pertinent provision of Code, 52-2-2, relating to the selection and drawing of grand juries, provides: "The jury commissioners * * * shall select and draw persons for grand juries. Such commissioners shall, at the levy term of the county court each year, and at any other time when required by the court which appointed them, or the judge thereof in vacation, prepare a list of not less than one hundred nor more than two hundred qualified persons of their county, for grand jury service, chosen from the respective magisterial districts thereof, as nearly as may be in proportion to the population of the districts. The lists so prepared shall be submitted to the clerk of the court authorized to impanel a grand jury, or the judge thereof when required, and the name of any person who is not qualified shall be stricken from the list by the

clerk or judge. The persons so listed shall be men of good moral character * * * and shall have been bona fide residents of the State and county for at least one year immediately preceding the preparation of the list * * *."

The question thus presented, of course, is whether this provision is mandatory, or, if directory only, whether there was a substantial compliance with the statute. While Article VIII, Section 21, of the West Virginia Constitution, provides that the common law remains in effect in this State, except in so far as it has been changed by statute, it is clear from the thirteen sections of Article 2, Chapter 52, of the Code, relating to grand juries, that the common law relative thereto has been supplanted by these statutory provisions. Therefore, a grand jury selected from a list of persons prepared as prospective grand jurors, which is not in compliance with the provisions of Code, 52-2-2, is invalid. This language of that section is at the crux of the issue here presented: "Such commissioners shall, at the levy term of the county court each year, * * *."

The defendant places great reliance for his position as to the invalidity of the grand jury which returned this indictment upon the cases of *State* v. *Wetzel*, 75 W. Va. 7, 83 S. E. 68; and *State* v. *Stafford*, 89 W. Va. 301, 109 S. E. 326.

A careful examination of the *Wetzel* case shows that it is not in point. It was held in that case that the provisions of the statute in effect at that time, which required the clerk of a county court to be present and assist in the drawing of grand jurors from a previously prepared list, was mandatory, but that the issuance of a summons by the clerk of a circuit court requiring a clerk of a county court to attend such drawing of grand jurors, was directory, provided that the county clerk was actually in attendance. Furthermore, it was held in that case that the statutory provisions that the list of names of persons selected by a county court (which at that time prepared the grand jury list) to serve as such, as well

as the delivery of such list to, and its preservation by, the clerk of a circuit court, were mandatory provisions. The failure to comply therewith renders the grand jury illegal, and any indictment returned by a grand jury so selected is void.

In the *Stafford* case, the same statute was in effect, requiring the county court to prepare the grand jury list at its levy term, and the question there presented was whether the county court had prepared the list during such term. This Court held that it had complied with that statutory provision, and we find no language in the opinion implying that the list would have been invalid had it been selected subsequent to the expiration of the levy term.

In addition to the cases heretofore discussed, this Court has in many other cases had occasion to interpret the provisions of Article 2 of Chapter 52. In *State* v. *Muncey,* 102 W. Va. 462, 135 S. E. 594, it was held that a grand jury was not invalid by virtue of the clerk drawing 16 grand jurors from the box, although Section 2 of such Article provided that grand juries should be selected and drawn by jury commissioners. In *State* v. *Austin,* 93 W. Va. 704, 117 S. E. 607, the error alleged was that the clerk of the circuit court had notified the grand jurors by postal cards to appear on a certain day, whereas Section 3 of Article 2 provided that the clerk should summon the grand jury to appear on a certain day. This Court held that that provision was directory, and that the procedure followed did not invalidate the indictment returned by a grand jury so convened. In *State* v. *Burdette,* 135 W. Va. 312, 63 S.E. 2d. 69, this Court held that, even though one of the grand jurors who returned an indictment was not a resident of the county, it would not invalidate the indictment, though Section 2 provides that persons selected for grand jury service shall be citizens of the county for at least one year preceding the preparation of the list. Reliance for this decision was placed upon the provisions of Code, 52-2-12, which reads as follows: "No presentment or indictment shall

be quashed or abated on account of the incompetency or disqualification of any one or more of the grand jurors who found the same."

The provision that the clerk of the circuit court shall, at least thirty days before any term of such court, issue a venire facias for sixteen grand jurors has been held directory in several cases. *State* v. *Wetzel, supra; State* v. *Hoke, et al.,* 76 W. Va. 36, 84 S. E. 1054; *State* v. *Howard,* 137 W. Va. 51, 73 S. E. 2d. 18. It has also been held in *State* v. *Howard, supra,* and other cases, that the provisions of Section 8, Article 2, relative to the placing of the names of witnesses who appear before a grand jury upon an indictment, was directory and did not invalidate the indictment.

The provisions in the statute at the time *State* v. *Henderson,* 29 W. Va. 147, 1 S. E. 225, was decided, which provided that grand jurors should be freeholders, was held to be directory, and that the indictment was not invalid even though one of the grand jurors who returned the indictment was not a freeholder.

It was held in *State* v. *Driver,* 88 W. Va. 479, 107 S. E. 189, that an indictment was valid which was returned by a grand jury, one of the members of which was an officeholder, even though the statute provided that grand jurors shall not be officeholders.

In *State* v. *Howard, supra,* it was held that the provision that jury commissioners of courts of limited jurisdiction shall be appointed by such courts, or the judges thereof in vacation, was mandatory, and that the appointment of a jury commissioner to draw jurors from grand jury lists by a clerk of the court, made the jury illegal.

Article 1 of Chapter 52 deals with petit juries, and Section 3 thereof provides that the term of office of jury commissioners shall be for four years. However, this Court held in *State* v. *Huff,* 80 W. Va. 468, 92 S. E. 681, that even though such commissioner's term of office had

expired prior to assisting in the preparation of a jury list, it was not ground for challenge to the array since the commissioner was serving as an officer de facto, and his actions were valid and binding in the absence of a showing of actual prejudice to the rights of the defendant. In considering another question raised in the *Huff* case, careful attention should be given to Point 4 of the Syllabus which reads as follows: "The statute requiring jury commissioners to prepare and to the clerk deliver for record in his office a list of the jurors selected by them is directory, and a reasonable delay in the performance of that duty is not such a material irregularity as will warrant a motion to quash a panel drawn from the list." It will be observed that this syllabus point is based upon one sentence in the opinion which says: "It is well settled also that the statutory requirement that commissioners shall make out and deliver to the clerk a list of the persons selected by them is directory, not mandatory, and that delay in the performance of this duty is not a material irregularity. * * *" It is not possible to ascertain from the facts stated in the opinion the basis for the defendant's challenge to the array, but it appears obvious from Syllabus Point 4, and the statement contained in the opinion, both of which have just been quoted, that the challenge was upon the ground of delay by the jury commissioners in preparing and delivering to the clerk a list of persons selected as grand jurors. This statutory duty of the jury commissioners was held to be directory. We believe it equally clear that the Court did not hold that the annual preparation of a list by the jury commissioners was merely directory, but, to the contrary, indicated that such was mandatory, and we so construe the holding in that case.

In *State* v. *Medley, supra,* it was held that the verdict of a petit jury would not be set aside upon the ground that a jury commissioner had not taken the oath required by Code, 52-1-3.

Although not directly in point upon the facts, this Court said in *Eastham* v. *Holt, Judge,* 43 W. Va. 599, 27

S. E. 883, in quoting from Thompson and Merriam, Juries, Section 140, that: " "* * * The grand jury is merely an accusing body, and the liberty of the citizen does not require that nice inquiry should be made into the manner in which it has been organized. The main question is whether the prisoner has been justly accused or not. * * * Such attacks have been successful in American courts with scandalous frequency, and almost universally to the thwarting of public justice and the injury of society. * * *' "

The precise question here presented has not been passed upon by this Court, but under similar statutes there is some authority elsewhere. In *State* v. *Burris,* 194 Iowa 628, 190 N. W. 38, it was held that a statute of that state was directory which provided that the jury commissioners "shall" meet on a certain day in November of each biennium for the purpose of preparing a grand jury list. The court said: "The provision of the statute with regard to the date of the meeting of the jury commission is directory and not mandatory, and the selection of the jury lists in December, instead of November, as provided by the statute, did not render such lists invalid and void. The meeting, although irregular, was not illegal or invalid, and, unless some prejudice is shown to have resulted from the failure of the jury commission to meet at the designated time, their action at a subsequent date was not invalid."

The first syllabus point of *State* v. *Durham Fertilizer Co.,* 111 N. C. 658, 16 S. E. 231, reads as follows: "* * * the provision for the time for making up the list of jurors is directory only, and it is not a ground of challenge to a grand jury that the jury list was not made up at the time prescribed."

There is no suggestion in this record of bad faith or corruption on the part of the jury commissioners, or other officials of the Criminal Court of Harrison County. There is nothing in the record to show that the defendant has been prejudiced by having his case considered by grand jurors who were selected from a list prepared by the jury

commissioners in November, 1952, rather than at the levy term of the county court in 1953. This Court holds, therefore, that the indictment is valid, inasmuch as the provision of Code, 52-2-2, that the jury commissioners shall prepare a list of persons for grand jury service "at the levy term of the county court" each year, is directory, and that, in the absence of a showing of fraud or prejudice, a substantial compliance with the provisions of that section is sufficient. We find that there was such substantial compliance in this case. The provision of that section that the jury commissioners shall prepare a list of qualified persons "each year" for grand jury service is mandatory. For further discussion of the question as to the validity of the grand jury see *State* v. *Carduff, supra,* the opinion in which was prepared by Judge Haymond, and is handed down simultaneously herewith.

However, it should be observed that, even though there may be no connection between the meeting of the levy term of a county court and the meeting of jury commissioners to prepare a list of jurors for grand jury service, since the provisions of Section 2 are clear and unambiguous, every public officer should comply with the provisions of that section relative to the time when jury lists are prepared.

Upon a careful review of the record in this case, we find that the defendant received a fair and impartial trial upon an indictment returned by a validly constituted grand jury. The judgments of the Criminal and the Circuit Courts of Harrison County are affirmed.

*Affirmed.*