# Richmond

ELMER M. CHALLENOR V. COMMONWEALTH OF VIRGINIA.

April 28, 1969.

Record No. 6958.

Present, All the Justices.

*Archibald Wallace, III (Sands, Anderson, Marks & Clarke,* on brief), for plaintiff in error.

*M. Harris Parker, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for defendant in error.

GORDON, J., delivered the opinion of the court.

Elmer M. Challenor appeals from a final order entered on a jury verdict finding him guilty of embezzlement and fixing his punishment at two years in the penitentiary.

## I

The most important question on this appeal is whether the evidence was sufficient to sustain Challenor's conviction of embezzlement.

In 1967 the auditor of the City of Richmond discovered that certain payments made by Henrico County in 1965 for water furnished by the City had not been credited to Henrico on the records of the

City Department of Public Utilities. This discovery led to an examination of the tellers' records for the period January 18, 1965—May 7, 1965. That examination revealed a shortage or "lapping" of $21,139.33, reflected by the records of Teller #2 in the Department of Public Utilities.[1] Challenor was employed as Teller #2 during the period covered by the examination.

When a customer pays a bill rendered by the Department of Public Utilities, he must present or mail the bill or a duplicate with his remittance. If a teller receives $100 in cash together with a bill for $100, say on April 1, he should deposit the $100 to the credit of the Department and on the same day "validate" the bill by printing a receipt on the bill by means of his validating machine.

Lapping occurs if the teller steals the $100 received on April 1 and secretes the bill, instead of validating it. On a later day, say April 5, when the teller receives a $200 check together with a bill for $200, he deposits the $200 check, steals $100 out of his cash drawer or metal box, validates the April 1 bill for $100, and secretes the April 5 bill for $200. The dishonest teller intends at a later time to make restitution of the $200 or to make a fictitious covering entry or to continue the process indefinitely.

The evidence in this case showed that during January 1965 checks totaling $18,571.12 were processed, and that the corresponding bills were validated on the machine of Teller #2, not during that month, but on various days during February. During the period February 3, 1965—April 16, 1965 the difference between the total amount of checks received and the total amount of bills validated on the machine of Teller #2 increased from $18,571.12 to $21,139.33.

A Henrico County check for $29,631.09 was received on April 27, 1965. On the same day, the records of Teller #2 showed a credit of $8,491.76 to the County on the bill (presumably for $29,631.09) accompanying that check, a credit of $20,555.68 to the County on a bill received March 26, and a credit of $583.65 to other customers on bills received on previous days—a total credit of $29,631.09.[2]

---

[1] Lapping: "The theft, as by a cashier, of cash received from a customer, made good and credited to the customer's account at a later date by the theft of cash received from another customer, the process continuing indefinitely until the fraud is discovered, or until restitution is made or a fictitious covering entry, as to an expense account, can be made." E. Kohler, A Dictionary for Accountants 292 (3d ed. 1963).

[2] 41 checks received from customers during the period January 18—April 27 were used in whole or in part to validate bills of other customers.

Challenor does not contest that the records of Teller #2 show that lapping did occur. Rather, he professes his innocence of any wrongdoing and contends that another person must have embezzled the money and used his validating machine to conceal the embezzlements.

The Department employed Challenor, two other window tellers and a mail teller. The window tellers received and processed all payments made over the counter. The mail teller received all remittances made by mail and either processed the remittances and accompanying bills or turned them over to the window tellers for processing. The mail teller was instructed, however, to process only remittances made by check, and to turn over cash remittances to a window teller for processing.

An accountant, called as an expert witness for the defense, expressed the opinion that "a person handling the mail or any other documents that were turned over to a window teller would have had exactly the same opportunity to lap to the window teller that the window teller had to lap to the head teller". Apparently, he meant that the mail teller could have stolen money received through the mail, secreted the accompanying bill, and subsequently delivered that bill, together with a check received to pay another bill, to Challenor for validating on his machine.

Challenor also contends that other persons could have embezzled funds from the cash drawer and metal box in which he stored cash and bills, and could have used his validating machine to conceal their embezzlements. Challenor says that during the day, while he was in the restroom or at lunch, other tellers had easy access to his cash drawer, metal box and validating machine. "Tellers literally work elbow to elbow with easy access to the equipment, records and receipts of one another". Challenor points out that several persons, who knew the combination to the safe in which his metal box was stored at night, could have gained access to the box.

Nevertheless, the evidence sustained the jury's verdict that Challenor was guilty of embezzlement. The records turned in by Challenor show repeated validations of bills against remittances made to pay other bills. The jury could have reasonably disbelieved that Challenor's records reflected not his intentional actions, but the actions of others that he failed to perceive. Instead, the jury was justified in believing that Challenor embezzled funds from the City and attempted to conceal his embezzlements on the records he turned in to the head teller.

The case primarily relied upon by Challenor's counsel, *Webb* v. *Commonwealth*, 204 Va. 24, 129 S.E. 2d 22 (1963), does not support his position. In that case "the only evidence of a shortage was based on the fact that the deposits and cash on hand over the period in question did not equal the cash receipts as shown on the books". *Id.* at 34, 129 S.E. 2d at 30. Here the records show not only a shortage, but also an intent to conceal the shortage. And the repeated instances of late validations in this case (see n. 2, *supra*), shown by the records turned in by Challenor, belie a finding that someone other than Challenor attempted to conceal the shortage.

## II

The indictment charged Challenor with embezzling funds totaling $21,139.33 within a 30-month period preceding the date of the indictment. Defense counsel moved to quash the indictment on the ground that it did not comply with Code § 19.1-168, which permits an indictment to charge "any number of distinct acts of . . . embezzlements . . . which may have been committed . . . within six months from the first to the last of the acts charged in the indictment . . .". Va. Code Ann. § 19.1-168 (1960 Repl. vol.).

The court overruled the motion, and defense counsel assigned error to that ruling. We hold that the indictment did not contravene Code § 19.1-168 because it charged "a continuous plan or scheme and a single offense of embezzlement". *Webb* v. *Commonwealth*, 204 Va. 24, 32, 129 S.E. 2d 22, 28 (1963), citing with approval *State* v. *Wetzel*, 75 W. Va. 7, 83 S.E. 68 (1914).

## III

Before Challenor's trial, his counsel moved the court to require the Commonwealth (1) to specify the statute the Commonwealth intended to rely upon in seeking a conviction, (2) to make available to defense counsel all tangible evidence in its possession respecting the offense charged, and (3) to file a bill of particulars specifying over what period of time, and the specific dates when, the $21,139.33 mentioned in the indictment was received by and stolen from the City.

Responding to clause (1) of the motion, the Commonwealth specified that it intended to rely upon Code §§ 18.1-109 and 18.1-110, either or both.[3] Challenor's counsel contends that such advice did

---

[3] Code § 18.1-109 makes embezzlement from any employer a crime; Code § 18.1-110 makes embezzlement of public funds a crime.

not comply with the requirement of Code § 18.1-109, which provides that a defendant charged with larceny is entitled to know which "statute" the Commonwealth intends to rely upon in seeking a conviction. But since defense counsel made no objection to the advice given by the Commonwealth in this case until after the jury had returned its verdict, we dismiss this assignment of error. Va. Code Ann. § 19.1-165 (1960 Repl. vol.).

The court granted clause (2) of the motion, and the Commonwealth delivered to defense counsel a copy of the auditor's report on the examination of the records of the Department of Public Utilities for the period January 18, 1965—May 7, 1965.

The court denied clause (3) of the motion, and defense counsel assigned error to that ruling. We have no reason to believe that the auditor's report, which is not part of the record in this case, did not adequately and fully advise the defendant of the details of the charge against him. We therefore reject this assignment of error.

## IV

As mentioned *supra* p. 790, the records of Teller #2 that were introduced in evidence showed that $2,568.21 (the difference between $21,139.33 and $18,571.12) had been embezzled during the period January 31, 1965—April 27, 1965. By an assignment of error defense counsel complains that the City auditor was permitted to testify that the total shortage was $21,139.33.[4]

The auditor's testimony was proper. The records showed that during the period January 31—April 27 bills totaling $21,139.33 were validated against remittances made to pay other bills. The clear inference from this evidence was that validations were made during that period to conceal thefts totaling $21,139.33 made before and during the period.

## V

Lastly, defense counsel complains that in the Commonwealth's attorney's closing argument to the jury he referred to the fact that "seven honest and true citizens" who sat on the grand jury had indicted Challenor. The Commonwealth contends that these remarks

---

[4] The text sets forth our understanding of this assignment of error, which reads: "The Court erred in permitting the jury to hear and consider evidence on an amount ($18.000.00 of the $21,000.00 alleged to have been stolen) admittedly lost prior to the date of the Commonwealth's investigation."

were prompted by remarks made by defense counsel, and that any possible prejudice was cured by an instruction to the jury: "the fact that an indictment has been found against the accused is not to be considered as any evidence of guilt". We agree.

*Affirmed.*