COURT OF APPEALS OF VIRGINIA

Present:   Judges Benton, Frank and Felton
Argued at Chesapeake, Virginia


DAVID GORDON BRAGG

                                                    OPINION BY
v.        Record No. 0718-03-1               JUDGE ROBERT P. FRANK
                                                   MARCH 9, 2004
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Bonwill Shockley, Judge

        Annette Miller (Office of the Public Defender, on brief), for
        appellant.

        Amy L. Marshall, Assistant Attorney General (Jerry W. Kilgore,
        Attorney General, on brief), for appellee.


        David Gordon Bragg (appellant) was convicted in a bench trial of five counts of

embezzlement, in violation of Code §§ 18.2-111 and 18.2-95.[1]  On appeal, he does not contest

his general guilt, but contends the trial court erred in finding him guilty of five counts instead of

one.  He argues the single larceny doctrine required the trial court to find him guilty on only one

count.  Finding the single larceny doctrine does not apply to the facts of this case, we affirm the

five convictions.

BACKGROUND

        The facts are not in dispute.[2]  Appellant was one of two volunteer treasurers for St.

Andrews United Methodist Church in Virginia Beach.  Appellant's duties allowed him to write

---

        [1] Appellant entered a conditional plea of guilty, pursuant to Code § 19.2-254, with the
Commonwealth's consent, preserving this issue for appeal.

        [2] Although appellant testified in support of his motion to consolidate the indictments, the
trial court did not hear any additional evidence.  Instead, given appellant's guilty plea, the

and sign checks on behalf of the church and reconcile the church's bank accounts. Beginning on or about December 9, 1999, he began embezzling money from the church. Upon the end of his term as treasurer, the new treasurer discovered the discrepancies in the church's accounts.

Approximately 142 checks, worth $82,130.40, had been "written outside the scope of [appellant's] authority and to his benefit." Appellant used church funds to pay a number of personal debts, including his mortgage, his cell phone bill, a car loan, and other personal expenses. On several occasions, he made the checks payable to himself and indicated "payroll" on the checks.

Appellant admitted to the police that he had embezzled money from the church to pay personal bills. During the pretrial hearing on appellant's motion to merge the five counts into one count of embezzlement, appellant testified, "I was broke. I had no money. I was getting ready to lose everything." He took the church funds "[t]o continue living." However, appellant admitted he wrote checks to a friend "for computer work that he did for me," gave another individual a check for $750 on Christmas Eve of 1999, and took the same person with him on a trip to Israel, costing $3,572. All of these expenses were incurred after appellant began embezzling from the church, when he claimed he needed the funds to cover living expenses.

On cross-examination, the following exchange took place:

> [PROSECUTOR]: But you didn't start off in the beginning saying, I'm going to use church funds to write my mortgage payment every time it comes up, did you?
>
> [APPELLANT]: Well, no. I wouldn't say I did that.
>
> [PROSECUTOR]: Because it was your intention not to write another check? Each time you would write one, your thought would be, This is the last time I'm doing this; isn't that right?

---

Commonwealth filed a "Stipulation of Commonwealth's Evidence," signed by appellant and his attorney, at the time of trial.

[APPELLANT]: Yes, certainly, because I wanted to pay the
money back obviously.

Appellant argued that the five indictments should be merged into one because "it was a continuous desire to take the money for on-going bills . . . ." The Commonwealth argued the embezzlement was a series of individual impulses. In denying appellant's motion for merger, the trial court found appellant was taking money "as the need arose." The trial court found no "regular pattern" in the dates or groupings of the checks. The trial court concluded the funds were embezzled on "individual impulses" and were not based on a "preformulated plan":

> He embezzled these funds as the needs arose and his bills came
> due and that to some extent is corroborated or reflected in the dates
> and groupings of the checks and in the time intervals that exist
> between the various checks that are set forth in the Defendant's
> Exhibit 1. There is no – it's not a regular pattern. It seems to be
> consistent with exactly what he said [in his testimony today].

> \* \* \* \* \* \* \*

> [H]e was apparently incurring substantial personal debt for what
> would be -- most people would consider discretionary items, such
> as trips and expenses for other individuals that were the objects of
> his bounty, so to speak, and that apparently, at least in one
> instance, he was putting on his MasterCard or Visa or charge card;
> and then when that bill came due, he embezzled the funds to pay
> that.

ANALYSIS

Appellant contends he should be convicted of only one count of embezzlement under the single larceny doctrine since he wrote the 142 checks under a "single impulse." We disagree.[3]

---

[3] We do not address nor do we decide whether embezzlement is an offense subject to a single larceny doctrine analysis. At the hearing on the motion to merge, both counsel made their arguments assuming that the doctrine would apply if the evidence proved the acts resulted from a "single impulse." The trial court found the acts of embezzlement were numerous "individual impulses." As the Commonwealth at trial essentially conceded the single larceny doctrine can apply to embezzlement cases and concedes on appeal that we "need not decide" whether this doctrine applies generally to resolve this case, we will not consider whether Virginia law should allow the doctrine to apply to charges of embezzlement. See Garcia v. Commonwealth, 40 Va. App. 184, 192 n.2, 578 S.E.2d 97, 100 n.2 (2003) (noting *dicta* includes holdings that were

In Richardson v. Commonwealth, 25 Va. App. 491, 497, 489 S.E.2d 697, 700 (1997) (*en banc*), we held, "[u]nless the evidence proves that two or more separate and discrete thefts occurred at separate times which were not part of the same larcenous impulse, then thefts from the same room are but a single larceny." This Court explained the factors to consider in Acey v. Commonwealth, 29 Va. App. 240, 247, 511 S.E.2d 429, 432 (1999):

> A series of larcenous acts will be considered a single count of larceny if they "are done pursuant to a single impulse and in execution of a general fraudulent scheme." West v. Commonwealth, 125 Va. 747, 754, 99 S.E. 654, 656 (1919). We must consider the following factors when deciding whether the single larceny doctrine applies: (1) the location of the items taken, (2) the lapse of time between the takings, (3) the general and specific intent of the taker, (4) the number of owners of the items taken and (5) whether intervening events occurred between the takings. See Richardson v. Commonwealth, 25 Va. App. 491, 497, 489 S.E.2d 697, 700 (1997). "The primary factor to be considered is the intent of the thief . . . ." See id.

As this analysis turns on the particular facts of a case, see Richardson, 25 Va. App. at 497-98, 489 S.E.2d at 700-01, we will affirm the trial court's determination unless plainly wrong or unless the record lacks any evidence to support that determination, see Byers v. Commonwealth, 37 Va. App. 174, 179, 554 S.E.2d 714, 716 (2001). Thus, our inquiry is whether the evidence supports the fact finder's determination that the acts of embezzlement were individual impulses and not committed under a "'single impulse and in execution of a general fraudulent scheme.'" Richardson, 25 Va. App. at 496, 489 S.E.2d at 700 (quoting West, 125 Va. at 754, 99 S.E. at 656.

Clearly, appellant had a general scheme or intent to steal. However, a series of thefts committed under a general scheme is not the controlling factor in determining whether the single larceny doctrine applies. As this Court stated in Richardson, "a series of thefts committed in

---

unnecessary to the appellate court's decision and, therefore, are not binding on subsequent appellate decisions).

rapid succession pursuant to a general scheme to steal from distinct locations, such as different shops, stores, or buildings, will constitute separate offenses." 25 Va. App. at 497, 489 S.E.2d at 700. In such cases, "[t]he primary factor to be considered is the intent of the thief and the question to be asked is whether the thefts, although occurring successively within a brief time frame, were part of one impulse." Id.[4]

We must decide whether appellant acted under the same impulse or different impulses in each of the five time periods set forth in the indictments.[5] We review the facts of this case in light of the factors in Acey.[6] The church was the only victim, perhaps suggesting a single intent. However, the lapse of time between the offenses was significant – twenty-five months from the first act of embezzlement to the last. Such a length of time, under these circumstances, constitutes a factor indicating the acts were separate. Typical cases finding one transaction commonly involve more contemporaneous acts. See Acey, 29 Va. App. at 247, 511 S.E.2d at 432 (finding "no appreciable lapse of time" between larcenous acts); Millard v. Commonwealth, 34 Va. App. 202, 207, 539 S.E.2d 84, 86 (2000) (finding one transaction where three checks were presented to a bank teller); Richardson, 25 Va. App. at 497, 489 S.E.2d at 700 (considering thefts that occurred "within a brief time frame").

Appellant's testimony is especially relevant, as it indicates his intent throughout the various time periods. He testified he did not form a general plan to steal church funds every time

---

[4] Appellant conceded at oral argument that embezzlement could give rise to multiple counts, depending on the facts.

[5] The indictments set forth the following dates for the five offenses: December 8, 1999 through May 15, 2000; May 18, 2000 through October 11, 2000; October 17, 2000 through April 5, 2001; April 10, 2001 through September 6, 2001; September 11, 2001 through January 7, 2002.

[6] We note that some of the factors cannot be discussed here. For example, no tangible property was stolen, so the "location" of the stolen "items" cannot be addressed.

a bill came due. This testimony supports the trial court's finding that appellant acted on individual impulses, not to further a general scheme. Appellant testified that, when an individual debt was due, it created the "need" to embezzle again. He claimed that he cashed the checks to "continue living" because he could not pay his bills otherwise. According to his own testimony, appellant did not intend to continue taking money from the church. Only when a debt arose that he could not pay from his own income would he cash a check from the church. After paying that debt, he had no intention to embezzle again. These debts were intervening acts that created individualized intentions to embezzle.

Further, the trial court properly concluded that appellant, by using funds for making gifts to third parties, evidenced a series of single impulses. Appellant's bills for computer services, his extravagant gifts, and his international trip rebutted any general and continuing need for basic living expenses.

Appellant cites Challenor v. Commonwealth, 209 Va. 789, 167 S.E.2d 116 (1969), to support his argument that the checks were signed and cashed as the result of a single impulse. His reliance is misplaced. The issue in Challenor was whether an indictment charging the defendant with embezzling funds over a thirty-month period complied with Code § 19.1-168 (recodified at Code § 19.2-223), which permitted a single indictment for "'any number of distinct acts of . . . embezzlements . . . which may have been committed . . . within six months from the first to the last of the acts charged in the indictment.'" Id. at 792, 167 S.E.2d at 118. The Supreme Court found the indictment charged "'a continuous plan or scheme and a single offense of embezzlement'" and, thus, did not violate the Code section. Id. (citing Webb v. Commonwealth, 204 Va. 24, 32, 129 S.E.2d 22, 28 (1963)). From this ruling, appellant argues that all embezzlement is a continuous plan or scheme. However, Challenor did not address the definition of embezzlement or the application of the single larceny doctrine. Instead, it addresses

an issue based on the agreed presumption that a continuous plan or scheme occurred. As the parties here disagree on whether a continuous plan existed, we find Challenor inapplicable here.

Additionally, Code § 19.2-223, the recodification of Code § 19.1-168 as considered in Challenor, specifically refers to "any number of distinct acts." Regarding this particular language, Mechling v. Slayton, 361 F. Supp. 770 (E.D. Va. 1973), is instructive. Mechling used 204 separate bank withdrawal slips to commit acts of embezzlement, which, pursuant to then Code § 19.1-168, were indicted as three counts covering three different six-month periods. Id. at 772. He contended, in a *habeas corpus* proceeding, that, because the indictments "carve[d] out three crimes in an allegedly arbitrary manner when in fact, only one continuing criminal transaction was in issue," the separate counts violated due process. Id. The district court rejected that argument, opining, "[t]he thrust of [Code § 19.1-168], therefore, is to allow joinder under one charge of separate crimes committed within the specified period where said joinder, absent statutory authority, possibly might run afoul of the rule of duplicity of charges. The rule of duplicity prohibits the simultaneous charging of several unrelated crimes in one indictment." Id. The court indicated the prosecution could have indicted the defendant on 204 separate counts, "seeking to prove each separately." Id.

Clearly, Code § 19.2-223, which appellant argues supports his position, simply allows the Commonwealth to join distinct charges into one indictment, which can cover a six-month period. The statute does not create any presumption that embezzlement is a continuing crime.

Appellant also asks us to consider Millard, 34 Va. App. 202, 539 S.E.2d 84. However, this case does not support appellant's position. Millard was charged with three separate counts of obtaining money by false pretenses for presenting three checks payable to Craig Funk, and further endorsed by "Jennifer Funk," and then representing herself as "Jennifer Funk." Id. at 204, 539 S.E.2d at 85. The checks were presented to the bank in one transaction, and Millard

received "one lump sum." Id. This Court reversed the three convictions under the single larceny doctrine. The Court found only one transaction had occurred; therefore, only a "single impulse" could be proved. Id. at 207, 539 S.E.2d at 86. Thus, Millard is distinguishable on its facts as appellant here does not argue the acts of embezzlement all occurred on the same day nor that he received the money in "one lump sum."

We conclude the evidence supports the trial court's finding that appellant entertained a separate and distinct intent to commit the various acts of embezzlement. We affirm the judgment of the trial court.

Affirmed.

Benton, J., dissenting.

At trial, David Bragg's attorney made a motion to merge the five specified acts of embezzlement alleged in the indictment into one count of embezzlement. She argued that the single larceny doctrine applied and that the indictment was drawn upon "a single plan of embezzlement" occurring in a continuous fashion. The prosecutor argued "that the statute [Code §] 19.2-223 gives [the Commonwealth] the leeway" to charge one embezzlement, five embezzlements, or "the option . . . to charge in this case 142 counts." I would hold that the trial judge erred in not granting Bragg's motion.

I.

The indictment in this case charged one general embezzlement. In particular, it alleged the following:

> The Special Grand Jurors of the Commonwealth of Virginia and of the City of Virginia Beach, attending the Court aforesaid, upon their oaths present that, in the City of Virginia Beach,
>
> **DAVID GORDON BRAGG**
>
> Did wrongfully and fraudulently use, dispose of, conceal, or embezzle monies in excess of $82,000.00, belonging to St. Andrews United Methodist Church, and did wrongfully and fraudulently use said monies for, among other purposes known and unknown to the Special Grand Jury, payments to a mortgage company, a homeowners association, a wireless communications service provider, and a credit company.
>
> 1. Embezzlement . . .
>
> On or about . . . December 8, 1999 through May 15, 2000, did . . . fraudulently . . . embezzle monies, having a value of $200.00 or more, belonging to St. Andrews United Methodist Church in violation of [Code §] § 18.2-111; 18.2-95 . . . .
>
> 2. Embezzlement . . .
>
> On or about . . . May 18, 2000 through October 11, 2000, did . . . fraudulently . . . embezzle monies, having a value of $200.00 or more, belonging to St. Andrews United Methodist Church in violation of [Code §] § 18.2-111; 18.2-95 . . . .

- 9 -

3. Embezzlement . . .

> On or about . . . October 17, 2000 through April 5, 2001, did . . . fraudulently . . . embezzle monies, having a value of $200.00 or more, belonging to St. Andrews United Methodist Church in violation of [Code §] § 18.2-111; 18.2-95 . . . .

4. Embezzlement . . .

> On or about . . . April 10, 2001 through September 6, 2001, did . . . fraudulently . . . embezzle monies, having a value of $200.00 or more, belonging to St. Andrews United Methodist Church in violation of [Code §] § 18.2-111; 18.2-95 . . . .

5. Embezzlement . . .

> On or about . . . September 11, 2001 through January 7, 2002, did . . . fraudulently . . . embezzle monies, having a value of $200.00 or more, belonging to St. Andrews Methodist Church in violation of [Code §] § 18.2-111; 18.2-95 . . . .

The stipulated evidence proved Bragg was a volunteer treasurer for the church. Beginning December 8, 1999 and continuing through January 7, 2002, Bragg fraudulently appropriated $82,130.40 from the church's account by writing 142 checks. The parties also stipulated the following facts:

> Bragg used church funds to pay the mortgage on his home . . . , to pay his cell phone account . . . , to pay off a loan he had obtained from AmeriCredit, and his Green Run Homeowners' Association dues, as examples. On several occasions he also made checks payable directly to himself and marked them "payroll," even though, as indicated earlier, he was a volunteer.
>
> \*     \*     \*     \*     \*     \*     \*
>
> . . . [Bragg] advised Detective Werle . . . that he had in fact embezzled money from the church admitting that he had used it to pay his mortgage, his cell phone bill, a car loan and other expenses. He further admitted that many of the checks from the church were deposited into his personal account . . . .

In addition, Bragg testified that he began embezzling the church's money when his income from his employment dropped by $30,000 and he began to have financial difficulty. He used his position as treasurer of the church to embezzle the church's funds to pay his bills and support his

- 10 -

lifestyle.  Bragg conceded that the evidence proved embezzlement.  He contends, however, that the evidence proved but one embezzlement.

## II.

Embezzlement is a statutory crime in Virginia, Moss v. Harwood, 102 Va. 386, 389, 46 S.E. 385, 386 (1904), and it "was devised by legislatures to address an inadequacy in the common law of larceny."  Gwaltney v. Commonwealth, 19 Va. App. 468, 474, 452 S.E.2d 687, 690-91 (1995).  At all times alleged in the indictment, the embezzlement statute provided as follows:

> If any person wrongfully and fraudulently use, dispose of, conceal or embezzle any money, bill, note, check, order, draft, bond, receipt, bill of lading or any other personal property, tangible or intangible, which he shall have received for another or for his employer, principal or bailor, or by virtue of his office, trust, or employment, or which shall have been entrusted or delivered to him by another or by any court, corporation or company, he shall be guilty of embezzlement.  Embezzlement shall be deemed larceny and upon conviction thereof, the person shall be punished as provided in [Code] § 18.2-95 or [Code] § 18.2-96.

Code § 18.2-111.

The statute penalizes a course of conduct.  It does not suggest that each individual act within that course of conduct may be charged as a separate offense *ad infinitum*.  Thus, the Supreme Court of Virginia has recognized "that an indictment charging an accused with embezzling money over a period of more than three years, stating the aggregate amount of such various sums, charges a continuous plan or scheme and a single offense of embezzlement." Webb v. Commonwealth, 204 Va. 24, 32, 129 S.E.2d 22, 28 (1963).  Indeed, the principle is well established that when a person embezzles by several acts or instances of defalcations the mere passage of time does not convert the single offense of embezzlement into several distinct offenses.  See State v. Gordon, 68 P.2d 635, 639 (1937).  Those several acts merely represent a

step or stage of the same offense, id., and can be charged in one count without regard to the period of time over which the acts occurred. Webb, 204 Va. at 32, 129 S.E.2d at 28.

The Commonwealth argues that Code § 19.2-223 supports its contention that it can indict separately for any number of distinct acts that may constitute embezzlement, thus it could have indicted Bragg separately for each of the 142 checks. In pertinent part, Code § 19.2-223 provides as follows:

> In a prosecution against a person accused of embezzling or fraudulently converting to his own use bullion, money, bank notes or other security for money or items of personal property subject to larceny it shall be lawful in the same indictment or accusation to charge and thereon to proceed against the accused for any number of distinct acts of such embezzlements or fraudulent conversions which may have been committed by him within six months from the first to the last of the acts charged in the indictment . . . .

This statute does no more than permit the Commonwealth to charge and proceed upon "any number of distinct acts" occurring within a six-month period as the basis for an embezzlement charge. The effect of this statute is to treat such acts as "related" and to statutorily prevent a claim that an indictment was defective under the rule prohibiting duplicity and misjoinder of charges in one indictment. See, e.g, Pettus v. Peyton, 207 Va. 906, 910, 153 S.E.2d 278, 281 (1967); Dean v. Commonwealth, 189 Va. 426, 432, 53 S.E.2d 141, 144 (1949); Federal Land Bank v. Birchfield, 173 Va. 200, 212-14, 3 S.E.2d 405, 409-10 (1939). See also Abney v. United States, 431 U.S. 651, 663-64 (1977); United States v. Burns, 990 F.2d 1426, 1438 (4th Cir. 1993); United States v. Hawkes, 753 F.2d 355, 357 (4th Cir. 1985); United States v. Stanley, 597 F.2d 866, 871 (4th Cir. 1979).

Interpreting the words "distinct acts of such embezzlement," the Supreme Court of Appeals of West Virginia long ago held that an indictment charging the entire amount of the embezzlement and specifying "a series of peculations by the cashier of the bank, extending over a period of three years," denoted those peculations as incidents of continuing transactions but

- 12 -

"charged . . . a single act of embezzlement." State v. Wetzel, 83 S.E. 68, 72-73 (W. Va. 1914). Our Supreme Court noted in Webb that the language found in the West Virginia statute "is practically the same as that of our statute," and the Court relied on the Wetzel interpretation in holding that embezzlement beginning January 1956 and continuing through February 1959 was "part of a continuous plan or scheme . . . so as to constitute a single offense." Webb, 204 Va. at 32, 129 S.E.2d at 28. This interpretation of the statute merely established a rule in Virginia that existed long ago in other jurisdictions. See, e.g., Gordon, 68 P.2d at 639 (holding that "[a]n information charging that the accused on the fifteenth day of August, 1900, and on divers dates and days from thence continuously to the tenth day of January, 1901, did then and there convert to his own use certain moneys amounting in the aggregate to a named sum, is not defective for duplicity, but charges one continuous offense"). It has long been the view in other states that an indictment charges one general crime of embezzlement when it recites a general allegation of embezzlement and specifies several counts showing the various ways in which the general crime was committed. See, e.g., State v. Brickford, 147 N.W. 407, 414 (N.D. 1913). Put simply, such an indictment alleges "various facts by which the common and necessary fact, that is to say, the substantive crime of embezzlement, was committed." Id. at 415. See also Wiley v. State, 349 P.2d 30, 37 (Okla. App. 1960).

III.

After reciting the fact of Bragg's embezzlement of $82,000 from the church, the indictments list five specific time periods in which Bragg embezzled amounts exceeding $200 or more for a total of $82,000: December 8, 1999 through May 15, 2000; May 18, 2000 through October 11, 2000; October 17, 2000 through April 5, 2001; April 10, 2001 through September 6, 2001; and September 11, 2001 through January 7, 2002. The record does not indicate that these five discrete time periods correlate to any transactions or acts that were of a separate or particular

nature.  The evidence contains no suggestion of events other than Bragg's continuous appropriation of the church's money by the writing of checks.  Indeed, the trial judge found that Bragg's "testimony really is fairly unequivocal in that he was doing this as the need arose" and that the pattern of check writing "seems to be consistent with exactly what he said."

In ruling that the evidence proved several embezzlements, the trial judge improperly focused upon the purpose for which Bragg used the funds rather than Bragg's intent, the continuity of his intent, and the continuous nature of his defalcations.  Noting that Bragg used the money for mortgage payments, utilities, groceries, trips, expenses incurred by others, and other discretionary spending, the trial judge found that no regular pattern existed to the use of the funds and, thus, attributed the appropriations to "individual impulses."  However, the multiple purposes for which Bragg used the embezzled funds after they went into his account cannot rationally be the basis for determining the unit of prosecution for embezzlement.  The statute renders irrelevant the purpose for which the embezzler uses the money.  See Code § 18.2-111 (unlawful to "wrongfully and fraudulently use, dispose of, conceal or embezzle . . . any . . . personal property, tangible or intangible, . . . received . . . by virtue of . . . office trust, or employment . . .")  In other words, "the crime of embezzlement depends upon the existence of a fraudulent intent in the mind of the person by whom the money or property is alleged to have been converted."  Page v. Commonwealth, 148 Va. 733, 741-42, 138 S.E. 510, 512 (1927).  See also Webb, 204 Va. at 34, 129 S.E.2d at 30 (holding that "it is necessary to prove that an accused wrongfully appropriated to his own use or benefit, with the intent to deprive the owner thereof, the property of another which has been entrusted to him by reason of his employment or office").

The evidence established that Bragg acted upon the impulse to appropriate the church's money after his salary from his employment dropped by $30,000.  This event led to a continuous and regular fraudulent scheme of writing checks from the church's bank account for his use and

benefit. See Challenor v. Commonwealth, 209 Va. 789, 792, 167 S.E.2d 116, 118 (1969) (holding that embezzling $21,139.33 within a thirty-month period by an employee from the accounts of his employer was a single offense of embezzlement). As the Appendix to this opinion demonstrates, Bragg wrote checks each month over the entire period of twenty-six months, beginning December 1999 and continuing through January 2002. Neither the pattern of appropriations nor any other evidence demonstrates that a change occurred in Bragg's intent or impulse. The evidence clearly established that Bragg engaged in a continuous theft of funds from the church.[7]

The Commonwealth established no event or intent that separates these appropriations into five distinct embezzlements as listed in the indictment: December 8, 1999 to May 15, 2000; May 18, 2000 to October 11, 2000; October 17, 2000 to April 5, 2001; April 10, 2001 to September 6, 2001; and September 11, 2001 to January 7, 2002. These segments merely were chosen under the misapprehension that six-month intervals were determined by Code § 19.2-223. Otherwise, the intervals bear no relation to Bragg's impulses, intent, or other events of the case. The evidence proved he had a continuing intention and impulse to appropriate the church's money. Indeed, the continuous and uninterrupted frequency at which Bragg appropriated these

---

[7] The notion that a series of distinct acts of embezzlement constitutes a single occurrence has also been applied in cases involving insurance claims. See, e.g., Business Interiors, Inc. v. Aetna Cas. & Surety Co., 751 F.2d 361, 363 (10th Cir. 1984) (noting that the "cause of [the] loss was the continued dishonesty [and] 'the intent to continue the dishonesty, not to commit an entirely new and different act of dishonesty'"). Thus, in Christian Lutheran Church v. State Farm Fire and Cas. Ins. Co., 471 S.E.2d 124 (N.C. App. 1996), the court held as follows:

> [I]n the instant case, plaintiff's employee wrote twenty-four (24) checks, over the course of several weeks, totalling $32,760.00. These checks were all written in furtherance of one employee's dishonest acts. They do not constitute a new and individual act of dishonesty, as alleged by plaintiff, but are instead a continuum of wrongful actions.

Id. at 126.

funds manifestly negates any notion that these acts of appropriation, which he committed almost weekly, were the product of individual impulses. No evidence tended to establish that Bragg's intent to wrongfully appropriate the funds was not a continuous impulse. Thus, I would hold that the indictment charged and the evidence proved "'a continuous plan or scheme and a single offense of embezzlement.'" Challenor, 209 Va. at 792, 167 S.E.2d at 118 (citation omitted).

IV.

The Supreme Court has described the single larceny doctrine as follows:

> [A] series of larcenous acts, regardless of the amount and value of the separate parcels or articles taken, and regardless of the time occupied in the performance, may and will constitute, in contemplation of law, a single larceny, provided the several acts are done pursuant to a single impulse and in execution of a general fraudulent scheme.

West v. Commonwealth, 125 Va. 747, 754-55, 99 S.E. 654, 656 (1919). We have previously applied the single larceny doctrine to the statutory offense of obtaining money by false pretenses. Millard v. Commonwealth, 34 Va. App. 202, 206, 539 S.E.2d 84, 86 (2000). In my view, the same rationale for extending the principle to cases of defalcations by false pretenses applies to embezzlements. Other states have applied the single larceny doctrine to embezzlement cases. See, e.g., State v. Roberts, 504 P.2d 242, 246 (Kan. 1972) (holding that the "single larceny doctrine" applies in embezzlement and other larceny cases); State v. Pedroncelli, 675 P.2d 127, 129-30 (N.M. 1984) (holding that the single larceny principle applies in embezzlement cases when "evidence . . . sufficiently showed [defendant's] continuing intention to violate her ongoing entrustment"); Nelson v. State, 344 S.W.2d 540, 542 (Tenn. 1960) (holding that successive takings constitute one embezzlement when the evidence proved "a common and continuing design and scheme to fraudulently appropriate the funds"). The facts recited in Parts I and III above constitute, in contemplation of law, a single embezzlement.

V.

For these reasons, I would hold that the indictment alleged one embezzlement of money in excess of $82,000 and that the five intervals listed on the indictment are representative of transactions establishing the one offense. Alternatively, I would apply the "single larceny" doctrine and hold that the indictment and the proof establish only one embezzlement. For these reasons, I would vacate four of the embezzlement convictions, affirm one conviction, and remand for reconsideration of the sentence.

| DATE | AMOUNT | DATE | AMOUNT |
|---|---|---|---|
| 12/9/99 | 100.00 | 6/9/00 | 500.00 |
| 12/23/99 | 500.00 | 6/21/00 | 1,914.77 |
| 12/30/99 | 500.00 | 6/27/00 | 200.00 |
| 1/4/00 | 400.00 | 6/30/00 | 214.14 |
| 1/10/00 | 500.00 | 7/5/00 | 920.36 |
| 1/20/00 | 200.00 | 7/7/00 | 300.00 |
| 1/21/00 | 250.00 | 7/19/00 | 2,500.00 |
| 1/24/00 | 600.00 | 7/19/00 | 456.16 |
| 1/25/00 | 250.00 | 8/1/00 | 2,800.00 |
| 2/1/00 | 600.00 | 8/8/00 | 600.00 |
| 2/8/00 | 400.00 | 8/8/00 | 100.00 |
| 2/9/00 | 162.00 | 8/9/00 | 200.00 |
| 2/16/00 | 400.00 | 8/11/00 | 491.32 |
| 2/23/00 | 200.00 | 8/18/00 | 800.00 |
| 2/25/00 | 1,000.00 | 8/22/00 | 500.00 |
| 3/1/00 | 1,000.00 | 8/23/00 | 300.00 |
| 3/7/00 | 1,500.00 | 8/29/00 | 1,500.00 |
| 3/9/00 | 1,500.00 | 8/30/00 | 172.00 |
| 4/7/00 | 250.00 | 9/5/00 | 500.00 |
| 4/11/00 | 200.00 | 9/5/00 | 514.72 |
| 4/11/00 | 150.00 | 9/6/00 | 500.00 |
| 4/17/00 | 300.00 | 9/8/00 | 723.35 |
| 4/18/00 | 400.00 | 9/18/00 | 200.00 |
| 4/21/00 | 500.00 | 9/19/00 | 300.00 |
| 4/24/00 | 400.00 | 9/21/00 | 200.00 |
| 4/25/00 | 250.00 | 9/22/00 | 359.42 |
| 5/2/00 | 100.00 | 9/27/00 | 1,439.49 |
| 5/2/00 | 400.00 | 10/3/00 | 800.00 |
| 5/5/00 | 500.00 | 10/5/00 | 250.00 |
| 5/9/00 | 600.00 | 10/10/00 | 300.00 |
| 5/15/00 | 1,000.00 | 10/11/00 | 250.00 |
| 5/18/00 | 1,000.00 | 10/11/00 | 513.55 |
| 5/22/00 | 500.00 | 10/17/00 | 150.00 |
| 5/24/00 | 450.00 | 10/17/00 | 600.00 |
| 6/5/00 | 500.00 | 10/19/00 | 400.00 |
| 6/5/00 | 500.00 | 10/23/00 | 400.00 |
| 6/6/00 | 500.00 | 10/24/00 | 400.00 |
| 6/8/00 | 650.00 | 11/3/00 | 600.00 |

---

[8] The record contains an exhibit listing each of the checks by check number, date the check cleared the bank, and amount.

| DATE | AMOUNT | | DATE | AMOUNT |
|------|--------|---|------|--------|
| 11/7/00 | 967.46 | | 8/23/01 | 480.71 |
| 11/7/00 | 800.00 | | 8/30/01 | 350.00 |
| 11/8/00 | 486.64 | | 9/4/01 | 500.00 |
| 11/9/00 | 550.00 | | 9/6/01 | 200.00 |
| 11/14/00 | 700.00 | | 9/11/01 | 180.00 |
| 11/21/00 | 400.00 | | 9/27/01 | 480.71 |
| 11/24/00 | 200.00 | | 10/10/01 | 467.92 |
| 12/4/00 | 500.00 | | 10/22/01 | 400.00 |
| 12/8/00 | 500.00 | | 10/23/01 | 462.23 |
| 12/20/00 | 800.00 | | 11/13/01 | 400.00 |
| 12/22/00 | 800.00 | | 11/13/01 | 500.00 |
| 12/27/00 | 1,500.00 | | 11/15/01 | 500.00 |
| 12/28/00 | 1,500.00 | | 11/19/01 | 900.00 |
| 12/29/00 | 1,000.00 | | 11/23/01 | 400.00 |
| 1/2/01 | 700.00 | | 11/26/01 | 300.00 |
| 1/3/01 | 479.83 | | 11/30/01 | 700.00 |
| 1/3/01 | 1,000.00 | | 12/3/01 | 480.71 |
| 1/5/01 | 950.00 | | 12/3/01 | 500.00 |
| 1/8/01 | 750.00 | | 12/4/01 | 500.00 |
| 1/9/01 | 800.00 | | 12/7/01 | 500.00 |
| 1/17/01 | 600.00 | | 12/14/01 | 500.00 |
| 1/22/01 | 600.00 | | 12/21/01 | 500.00 |
| 1/24/01 | 550.00 | | 1/3/02 | 462.23 |
| 1/24/01 | 300.00 | | 1/7/02 | 467.92 |
| 1/26/01 | 109.11 | | | |
| 2/2/01 | 800.00 | | | $82,130.40 |
| 2/5/01 | 400.00 | | | |
| 2/7/01 | 300.00 | | | |
| 2/20/01 | 1,300.00 | | | |
| 2/21/01 | 700.00 | | | |
| 3/27/01 | 1,300.00 | | | |
| 4/5/01 | 700.00 | | | |
| 4/10/01 | 300.00 | | | |
| 5/4/01 | 500.00 | | | |
| 6/1/01 | 400.00 | | | |
| 6/4/01 | 400.00 | | | |
| 6/12/01 | 942.94 | | | |
| 7/5/01 | 500.00 | | | |
| 7/15/01 | 480.71 | | | |
| 7/23/01 | 500.00 | | | |
| 8/3/01 | 600.00 | | | |
| 8/3/01 | 250.00 | | | |