BENTON, J.,
dissenting.
At trial, David Bragg’s attorney made a motion to merge the five specified acts of embezzlement alleged in the indictment into one count of embezzlement. She argued that the single larceny doctrine applied and that the indictment was drawn upon “a single plan of embezzlement” occurring in a continuous fashion. The prosecutor argued “that the statute [Code § ] 19.2-223 gives [the Commonwealth] the leeway” to charge one embezzlement, five embezzlements, or “the option ... to charge in this case 142 counts.” I would hold that the trial judge erred in not granting Bragg’s motion.
I.
The indictment in this case charged one general embezzlement. In particular, it alleged the following:
The Special Grand Jurors of the Commonwealth of Virginia and of the City of Virginia Beach, attending the Court aforesaid, upon their oaths present that, in the City of Virginia Beach,

DAVID GORDON BRAGG

Did wrongfully and fraudulently use, dispose of, conceal, or embezzle monies in excess of $82,000.00, belonging to St. Andrews United Methodist Church, and did wrongfully and fraudulently use said monies for, among other purposes known and unknown to the Special Grand Jury, payments to a mortgage company, a homeowners association, a wireless communications service provider, and a credit company.
1. Embezzlement ...
*617 On or about ... December 8, 1999 through May 15, 2000, did ... fraudulently ... embezzle monies, having a value of $200.00 or more, belonging to St. Andrews United Methodist Church in violation of [Code § ]§ 18.2-111; 18.2- 95....
2. Embezzlement ...
On or about ... May 18, 2000 through October 11, 2000, did ... fraudulently ... embezzle monies, having a value of $200.00 or more, belonging to St. Andrews United Methodist Church in violation of [Code § ] § 18.2-111; 18.2- 95....
3. Embezzlement ...
On or about ... October 17, 2000 through April 5, 2001, did ... fraudulently ... embezzle monies, having a value of $200.00 or more, belonging to St. Andrews United Methodist Church in violation of [Code § ] § 18.2-111; 18.2- 95....
4. Embezzlement ...
On or about ... April 10, 2001 through September 6, 2001, did ... fraudulently ... embezzle monies, having a value of $200.00 or more, belonging to St. Andrews United Methodist Church in violation of [Code § ] § 18.2-111; 18.2- 95....
5. Embezzlement ...
On or about ... September 11, 2001 through January 7, 2002, did ... fraudulently ... embezzle monies, having a value of $200.00 or more, belonging to St. Andrews Methodist Church in violation of [Code § ] § 18.2-111; 18.2- 95....
The stipulated evidence proved Bragg was a volunteer treasurer for the church. Beginning December 8, 1999 and continuing through January 7, 2002, Bragg fraudulently appropriated $82,130.40 from the church’s account by writing 142 checks. The parties also stipulated the following facts:
Bragg used church funds to pay the mortgage on his home ..., to pay his cell phone account ..., to pay off a loan he had obtained from AmeriCredit, and his Green Run Home *618 owners’ Association dues, as examples. On several occasions he also made checks payable directly to himself and marked them “payroll,” even though, as indicated earlier, he was a volunteer.
... [Bragg] advised Detective Werle ... that he had in fact embezzled money from the church admitting that he had used it to pay his mortgage, his cell phone bill, a car loan and other expenses. He further admitted that many of the checks from the church were deposited into his personal account....
In addition, Bragg testified that he began embezzling the church’s money when his income from his employment dropped by $30,000 and he began to have financial difficulty. He used his position as treasurer of the church to embezzle the church’s funds to pay his bills and support his lifestyle. Bragg conceded that the evidence proved embezzlement. He contends, however, that the evidence proved but one embezzlement.
II.
Embezzlement is a statutory crime in Virginia, Moss v. Harwood, 102 Va. 386, 389, 46 S.E. 385, 386 (1904), and it “was devised by legislatures to address an inadequacy in the common law of larceny.” Gwaltney v. Commonwealth, 19 Va.App. 468, 474, 452 S.E.2d 687, 690-91 (1995). At all times alleged in the indictment, the embezzlement statute provided as follows:
If any person wrongfully and fraudulently use, dispose of, conceal or embezzle any money, bill, note, check, order, draft, bond, receipt, bill of lading or any other personal property, tangible or intangible, which he shall have received for another or for his employer, principal or bailor, or by virtue of his office, trust, or employment, or which shall have been entrusted or delivered to him by another or by any court, corporation or company, he shall be guilty of embezzlement. Embezzlement shall be deemed larceny and *619 upon conviction thereof, the person shall be punished as provided in [Code] § 18.2-95 or [Code] § 18.2-96.
Code § 18.2-111.
The statute penalizes a course of conduct. It does not suggest that each individual act within that course of conduct may be charged as a separate offense ad infinitum. Thus, the Supreme Court of Virginia has recognized “that an indictment charging an accused with embezzling money over a period of more than three years, stating the aggregate amount of such various sums, charges a continuous plan or scheme and a single offense of embezzlement.” Webb v. Commonwealth, 204 Va. 24, 32, 129 S.E.2d 22, 28 (1963). Indeed, the principle is well established that when a person embezzles by several acts or instances of defalcations the mere passage of time does not convert the single offense of embezzlement into several distinct offenses. See State v. Gordon, 146 Kan. 41, 68 P.2d 635, 639 (1937). Those several acts merely represent a step or stage of the same offense, id., and can be charged in one count without regard to the period of time over which the acts occurred. Webb, 204 Va. at 32, 129 S.E.2d at 28.
The Commonwealth argues that Code § 19.2-223 supports its contention that it can indict separately for any number of distinct acts that may constitute embezzlement, thus it could have indicted Bragg separately for each of the 142 checks. In pertinent part, Code § 19.2-223 provides as follows:
In a prosecution against a person accused of embezzling or fraudulently converting to his own use bullion, money, bank notes or other security for money or items of personal property subject to larceny it shall be lawful in the same indictment or accusation to charge and thereon to proceed against the accused for any number of distinct acts of such embezzlements or fraudulent conversions which may have been committed by him within six months from the first to the last of the acts charged in the indictment....
This statute does no more than permit the Commonwealth to charge and proceed upon “any number of distinct acts” occurring within a six-month period as the basis for an embez *620 zlement charge. The effect of this statute is to treat such acts as “related” and to statutorily prevent a claim that an indictment was defective under the rule prohibiting duplicity and misjoinder of charges in one indictment. See, e.g., Pettus v. Peyton, 207 Va. 906, 910, 153 S.E.2d 278, 281 (1967); Dean v. Commonwealth, 189 Va. 426, 432, 53 S.E.2d 141, 144 (1949); Federal Land Bank v. Birchfield, 173 Va. 200, 212-14, 3 S.E.2d 405, 409-10 (1939). See also Abney v. United States, 431 U.S. 651, 663-64, 97 S.Ct. 2034, 2042, 52 L.Ed.2d 651 (1977); United States v. Burns, 990 F.2d 1426, 1438 (4th Cir.1993); United States v. Hawkes, 753 F.2d 355, 357 (4th Cir.1985); United States v. Stanley, 597 F.2d 866, 871 (4th Cir.1979).
Interpreting the words “distinct acts of such embezzlement,” the Supreme Court of Appeals of West Virginia long ago held that an indictment charging the entire amount of the embezzlement and specifying “a series of peculations by the cashier of the bank, extending over a period of three years,” denoted those peculations as incidents of continuing transactions but “charged ... a single act of embezzlement.” State v. Wetzel, 75 W.Va. 7, 83 S.E. 68, 72-73 (1914). Our Supreme Court noted in Webb that the language found in the West Virginia statute “is practically the same as that of our statute,” and the Court relied on the Wetzel interpretation in holding that embezzlement beginning January 1956 and continuing through February 1959 was “part of a continuous plan or scheme ... so as to constitute a single offense.” Webb, 204 Va. at 32, 129 S.E.2d at 28. This interpretation of the statute merely established a rule in Virginia that existed long ago in other jurisdictions. See, e.g., Gordon, 68 P.2d at 639 (holding that “[a]n information charging that the accused on the fifteenth day of August, 1900, and on divers dates and days from thence continuously to the tenth day of January, 1901, did then and there convert to his own use certain moneys amounting in the aggregate to a named sum, is not defective for duplicity, but charges one continuous offense”). It has long been the view in other states that an indictment charges one general crime of embezzlement when it recites a general *621 allegation of embezzlement and specifies several counts showing the various ways in which the general crime was committed. See, e.g., State v. Bickford, 28 N.D. 36, 147 N.W. 407, 414 (1913). Put simply, such an indictment alleges “various facts by which the common and necessary fact, that is to say, the substantive crime of embezzlement, was committed.” Id. at 415. See also Wiley v. State, 349 P.2d 30, 37 (Okla.Cr.App.1960).
III.
After reciting the fact of Bragg’s embezzlement of $82,000 from the church, the indictments list five specific time periods in which Bragg embezzled amounts exceeding $200 or more for a total of $82,000: December 8, 1999 through May 15, 2000; May 18, 2000 through October 11, 2000; October 17, 2000 through April 5, 2001; April 10, 2001 through September 6, 2001; and September 11, 2001 through January 7, 2002. The record does not indicate that these five discrete time periods correlate to any transactions or acts that were of a separate or particular nature. The evidence contains no suggestion of events other than Bragg’s continuous appropriation of the church’s money by the writing of checks. Indeed, the trial judge found that Bragg’s “testimony really is fairly unequivocal in that he was doing this as the need arose” and that the pattern of check writing “seems to be consistent with exactly what he said.”
In ruling that the evidence proved several embezzlements, the trial judge improperly focused upon the purpose for which Bragg used the funds rather than Bragg’s intent, the continuity of his intent, and the continuous nature of his defalcations. Noting that Bragg used the money for mortgage payments, utilities, groceries, trips, expenses incurred by others, and other discretionary spending, the trial judge found that no regular pattern existed to the use of the funds and, thus, attributed the appropriations to “individual impulses.” However, the multiple purposes for which Bragg used the embezzled funds after they went into his account cannot rationally be the basis for determining the unit of prosecution for *622 embezzlement. The statute renders irrelevant the purpose for which the embezzler uses the money. See Code § 18.2-111 (unlawful to “wrongfully and fraudulently use, dispose of, conceal or embezzle ... any ... personal property, tangible or intangible, ... received ... by virtue of ... office trust, or employment ... ”) In other words, “the crime of embezzlement depends upon the existence of a fraudulent intent in the mind of the person by whom the money or property is alleged to have been converted.” Page v. Commonwealth, 148 Va. 733, 741-42, 138 S.E. 510, 512 (1927). See also Webb, 204 Va. at 34, 129 S.E.2d at 30 (holding that “it is necessary to prove that an accused wrongfully appropriated to his own use or benefit, with the intent to deprive the owner thereof, the property of another which has been entrusted to him by reason of his employment or office”).
The evidence established that Bragg acted upon the impulse to appropriate the church’s money after his salary from his employment dropped by $30,000. This event led to a continuous and regular fraudulent scheme of writing checks from the church’s bank account for his use and benefit. See Challenor v. Commonwealth, 209 Va. 789, 792, 167 S.E.2d 116, 118 (1969) (holding that embezzling $21,139.33 within a thirty-month period by an employee from the accounts of his employer was a single offense of embezzlement). As the Appendix to this opinion demonstrates, Bragg wrote checks each month over the entire period of twenty-six months, beginning December 1999 and continuing through January 2002. Neither the pattern of appropriations nor any other evidence demonstrates that a change occurred in Bragg’s intent or impulse. The evidence clearly established that Bragg engaged in a continuous theft of funds from the church.[7]
*623 The Commonwealth established no event or intent that separates these appropriations into five distinct embezzlements as listed in the indictment: December 8, 1999 to May 15, 2000; May 18, 2000 to October 11, 2000; October 17, 2000 to April 5, 2001; April 10, 2001 to September 6, 2001; and September 11, 2001 to January 7, 2002. These segments merely were chosen under the misapprehension that six-month intervals were determined by Code § 19.2-223. Otherwise, the intervals bear no relation to Bragg’s impulses, intent, or other events of the case. The evidence proved he had a continuing intention and impulse to appropriate the church’s money. Indeed, the continuous and uninterrupted frequency at which Bragg appropriated these funds manifestly negates any notion that these acts of appropriation, which he committed almost weekly, were the product of individual impulses. No evidence tended to establish that Bragg’s intent to wrongfully appropriate the funds was not a continuous impulse. Thus, I would hold that the indictment charged and the evidence proved “ ‘a continuous plan or scheme and a single offense of embezzlement.’” Challenor, 209 Va. at 792, 167 S.E.2d at 118 (citation omitted).
IV.
The Supreme Court has described the single larceny doctrine as follows:
[A] series of larcenous acts, regardless of the amount and value of the separate parcels or articles taken, and regardless of the time occupied in the performance, may and will constitute, in contemplation of law, a single larceny, provid *624 ed the several acts are done pursuant to a single impulse and in execution of a general fraudulent scheme.
West v. Commonwealth, 125 Va. 747, 754-55, 99 S.E. 654, 656 (1919). We have previously applied the single larceny doctrine to the statutory offense of obtaining money by false pretenses. Millard v. Commonwealth, 34 Va.App. 202, 206, 539 S.E.2d 84, 86 (2000). In my view, the same rationale for extending the principle to cases of defalcations by false pretenses applies to embezzlements. Other states have applied the single larceny doctrine to embezzlement cases. See, e.g., State v. Roberts, 210 Kan. 786, 504 P.2d 242, 246 (1972) (holding that the “single larceny doctrine” applies in embezzlement and other larceny cases); State v. Pedroncelli, 100 N.M. 678, 675 P.2d 127, 129-30 (1984) (holding that the single larceny principle applies in embezzlement cases when “evidence ... sufficiently showed [defendant’s] continuing intention to violate her ongoing entrustment”); Nelson v. State, 208 Tenn. 179, 344 S.W.2d 540, 542 (1960) (holding that successive takings constitute one embezzlement when the evidence proved “a common and continuing design and scheme to fraudulently appropriate the funds”). The facts recited in Parts I and III above constitute, in contemplation of law, a single embezzlement.
V.
For these reasons, I would hold that the indictment alleged one embezzlement of money in excess of $82,000 and that the five intervals listed on the indictment are representative of transactions establishing the one offense. Alternatively, I would apply the “single larceny” doctrine and hold that the indictment and the proof establish only one embezzlement. For these reasons, I would vacate four of the embezzlement convictions, affirm one conviction, and remand for reconsideration of the sentence.
APPENDIX[8]
*625 DATE AMOUNT
12/9/99 100.00
12/23/99 500.00
12/30/99 500.00
1/4/00 400.00
1/10/00 500.00
1/20/00 200.00
1/21/00 250.00
1/24/00 600.00
1/25/00 250.00
2/1/00 600.00
2/8/00 400.00
2/9/00 162.00
2/16/00 400.00
2/23/00 200.00
2/25/00 1,000.00
3/1/00 1,000.00
3/7/00 1,500.00
3/9/00 1,500.00
4/7/00 250.00
4/11/00 200.00
4/11/00 150.00
4/17/00 300.00
4/18/00 400.00
4/21/00 500.00
4/24/00 400.00
4/25/00 250.00
5/2/00 100.00
5/2/00 400.00
5/5/00 500.00
5/9/00 600.00
5/15/00 1,000.00
5/18/00 1,000.00
5/22/00 500.00
5/24/00 450.00
6/5/00 500.00
6/5/00 500.00
6/6/00 500.00
6/8/00 650.00
6/9/00 500.00
6/21/00 1,914.77
6/27/00 200.00
6/30/00 214.14
7/5/00 920.36
7/7/00 300.00
7/19/00 2,500.00
7/19/00 456.16
8/1/00 2,800.00
*626 8/8/00 600.00
8/8/00 100.00
8/9/00 200.00
8/11/00 491.32
8/18/00 800.00
8/22/00 500.00
8/23/00 300.00
8/29/00 1,500.00
8/30/00 172.00
9/5/00 500.00
9/5/00 514.72
9/6/00 500.00
9/8/00 723.35
9/18/00 200.00
9/19/00 300.00
9/21/00 200.00
9/22/00 359.42
9/27/00 1,439.49
10/3/00 800.00
10/5/00 250.00
10/10/00 300.00
10/11/00 250.00
10/11/00 513.55
10/17/00 150.00
10/17/00 600.00
10/19/00 400.00
10/23/00 400.00
10/24/00 400.00
11/3/00 600.00
11/7/00 967.46
11/7/00 800.00
11/8/00 486.64
11/9/00 550.00
11/14/00 700.00
11/21/00 400.00
11/24/00 200.00
12/4/00 500.00
12/8/00 500.00
12/20/00 800.00
12/22/00 800.00
12/27/00 1,500.00
12/28/00 1,500.00
12/29/00 1,000.00
1/2/01 700.00
1/3/01 479.83
1/3/01 1,000.00
1/5/01 950.00
1/8/01 750.00
1/9/01 800.00
1/17/01 600.00
*627 1/22/01 600.00
1/24/01 550.00
1/24/01 300.00
1/26/01 109.11
2/2/01 800.00
2/5/01 400.00
2/7/01 300.00
2/20/01 1,300.00
2/21/01 700.00
3/27/01 1,300.00
4/5/01 700.00
4/10/01 300.00
5/4/01 500.00
6/1/01 400.00
6/4/01 400.00
6/12/01 942.94
7/5/01 500.00
7/15/01 480.71
7/23/01 500.00
8/3/01 600.00
8/3/01 250.00
8/23/01 480.71
8/30/01 350.00
9/4/01 500.00
9/6/01 200.00
9/11/01 180.00
9/27/01 480.71
10/10/01 467.92
10/22/01 400.00
10/23/01 462.23
11/13/01 400.00
11/13/01 500.00
11/15/01 500.00
11/19/01 900.00
11/23/01 400.00
11/26/01 300.00
11/30/01 700.00
12/3/01 480.71
12/3/01 500.00
12/4/01 500.00
12/7/01 500.00
12/14/01 500.00
12/21/01 500.00
1/3/02 462.23
1/7/02 467.92
$82,130.40

. The notion that a series of distinct acts of embezzlement constitutes a single occurrence has also been applied in cases involving insurance claims. See, e.g., Business Interiors, Inc. v. Aetna Cas. & Surety Co., 751 F.2d 361, 363 (10th Cir.1984) (noting that the "cause of [the] loss was the continued dishonesty [and] ‘the intent to continue the dishonesty, not to commit an entirely new and different act of dishonesty' "). Thus, *623 in Christ Lutheran Church v. State Farm Fire and Cas. Ins. Co., 122 N.C.App. 614, 471 S.E.2d 124 (1996), the court held as follows:
[I]n the instant case, plaintiffs employee wrote twenty-four (24) checks, over the course of several weeks, totalling $32,760.00. These checks were all written in furtherance of one employee's dishonest acts. They do not constitute a new and individual act of dishonesty, as alleged by plaintiff, but are instead a continuum of wrongful actions.
Id. at 126.

. The record contains an exhibit listing each of the checks by check number, date the check cleared the bank, and amount.